865 P.2d 957

**FAIRWAY DEVELOPMENT COMPANY, a Utah partnership, Plaintiff–Appellant,**

v.

**The Law Firm of: PETERSEN, MOSS, OLSEN, MEACHAM & CARR, Defendant–Respondent.**

No. 20292.

Supreme Court of Idaho,
Pocatello, September 1993 Term.

Dec. 22, 1993.

Petersen, Moss, Olsen, Meacham & Carr (Petersen). Fairway filed suit against Petersen on December 12, 1991 alleging Petersen committed malpractice by failing to appeal tax claims through the proper administrative channels. The district court dismissed Fairway's malpractice claim on summary judgment. The district court ruled Fairway suffered "some damage" when Fairway's tax assessment claims were dismissed on November 3, 1988. The district court found Fairway did not bring its malpractice claim before the two-year statute of limitations ran on November 3, 1990. Therefore, Fairway's suit was time barred by the statute of limitations. We affirm.

## BACKGROUND

In 1980, Fairway hired Petersen to challenge tax assessments made against certain property Fairway owned. Over the next several years Petersen filed challenges with the Bannock County Board of Equalization and notices of appeal with the Board of Tax Appeals. Petersen also filed an action in district court to recover taxes which Fairway had already paid under protest; summary judgment was ultimately granted in favor of Bannock County. Fairway appealed to this Court which remanded the case back to the district court for a determination of whether the appraisal method employed by the county considered the actual and functional use of the property. *Fairway Development Company v. Bannock County*, 113 Idaho 933, 750 P.2d 954 (1988).

On remand, the district court did not reach the issue of the appropriate appraisal method and instead ruled that it did not have subject matter jurisdiction to hear the tax assessment claims because Fairway had failed to exhaust all administrative remedies. The district court dismissed Fairway's claims for 1980–1984. Thus, as of November 3, 1988, when the district court dismissed the claims, Fairway lost its ability to pursue litigation on the dismissed tax assessment claims because the time to appeal properly through administrative channels had already expired.[1] Fair-

Ward, Maguire & Bybee, Pocatello, for plaintiff-appellant. David H. Maguire argued.

Benoit, Alexander, Sinclair, Doerr, Harwood & High, Twin Falls, for defendant-respondent. Thomas B. High argued.

TROUT, Justice.

This is an appeal from a legal malpractice action brought by Fairway Development Company (Fairway) against the law firm of

1. For the years 1980, 1982 and 1983 Fairway

failed to appeal the adverse tax assessments with-

way, represented by Petersen, appealed the district court's decision. On November 28, 1990, this Court affirmed the decision dismissing Fairway's tax claims. *Fairway Development Co. v. Bannock County*, 119 Idaho 121, 804 P.2d 294 (1990).

On December 1, 1988, Petersen informed Fairway of the adverse decision by the district court. A letter from Petersen to Snow, Christensen & Martineau, a Salt Lake City law firm, dated December 20, 1988, indicates that the Salt Lake City law firm had been hired by Fairway and had contacted Petersen regarding "any potential claim of Fairway." In March, 1989, Petersen met with Snow, Christensen & Martineau to consider its representation of Fairway in regard to the tax assessment disputes. On May 11, 1989, Petersen withdrew from representing Fairway on all pending tax assessment cases because of a potential conflict of interest. The firm did continue to represent Fairway at no charge in the appeal from the trial court's decision. Fairway, represented by a different Idaho law firm, appealed Bannock County's tax assessment for 1989. In August 1990, the Board of Tax Appeals ruled in Fairway's favor, reducing the tax assessment for 1989.

On December 12, 1991, Fairway filed suit against Petersen alleging Petersen committed malpractice. On October 2, 1992, the district court ruled Fairway suffered "some damage" when the district court dismissed Fairway's tax assessment claims in November of 1988. Accordingly, the district court dismissed Fairway's malpractice claim against Petersen as time barred by the statute of limitations, I.C. § 5–219(4), as of November 3, 1990.

## I.

### THERE IS OBJECTIVE PROOF THAT FAIRWAY SUFFERED SOME ACTUAL DAMAGE AS OF NOVEMBER 3, 1988

Fairway asks this Court to adopt a bright line rule that the statute of limitations does not start to run on a legal malpractice action until the court of last resort renders a final decision. In the alternative, Fairway argues the statute of limitations did not start to run until the Board of Tax Appeals confirmed Fairway's property was over assessed entitling Fairway to a refund.

 Idaho law provides that the statute of limitations on a professional malpractice claim will expire two years following the occurrence, act or omission complained of, barring fraudulent or knowing concealment of the injury, and will not be extended due to any continuing consequences, resulting damages, or continuing professional relationship. I.C. § 5–219(4). This Court has said that "[i]t is axiomatic that in order to recover under a theory of negligence, the plaintiff must prove actual damage." *Stephens v. Stearns*, 106 Idaho 249, 254, 678 P.2d 41, 46 (1984). Thus, "[a]lthough not stated in the statute, this Court has interpreted the law to require 'some damage' before the action accrues and the limitation period begins to run." *Bonz v. Sudweeks*, 119 Idaho 539, 541, 808 P.2d 876, 878 (1991), *citing Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989). This Court has further interpreted I.C. § 5–219(4) to mean that "an action for professional malpractice shall be deemed to have accrued for the purpose of I.C. § 5–219(4) only when there is *objective proof* that would support the existence of some actual damage." (Emphasis added). *Chicoine v. Bignall*, 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992).

In attempting to define the parameters of the "some damage" rule, this Court has held that "some damage" was suffered when a party incurred attorney fees in order to pursue an action against an attorney for alleged malpractice. *Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989). This Court ruled that "some damage" was suffered when the party commenced its defense of a claim, where the attorney's alleged malpractice gave rise to

in thirty days to the Board of Tax Appeals, I.C. § 63–2210. In 1981, Fairway failed to file the notice of appeal with the clerk of the Board of Tax Appeals within thirty days of the Board of Tax Appeals' decision, I.C. § 63–3812(a). In 1984, Fairway filed a protest with the Board of Equalization, but then stipulated to withdraw the appeal and allow the issues to be resolved in the district court case. *Fairway Development Co. v. Bannock County*, 119 Idaho 121, 804 P.2d 294 (1990).

the plaintiff's claim. *Id.* at 228, 775 P.2d at 120. On another occasion, this Court held that when a bankruptcy court confirmed an amended Chapter 13 plan, which fixed the parties' rights and obligations to pursue post-confirmation interest, "some damage" was suffered by the party seeking to enforce the claim for interest. *Treasure Valley Bank v. Killen & Pittenger,* 112 Idaho 357, 732 P.2d 326 (1987). The loss of the right to pursue post-confirmation interest was "some damage" and the creditor's malpractice claim against its attorney for failing to request post-confirmation interest was deemed accrued as of the date of confirmation. *Id.* at 357, 732 P.2d at 326.

Fairway relies on *Chicoine v. Bignall,* 122 Idaho 482, 835 P.2d 1293 (1992), for the proposition that a malpractice claim does not accrue until the Supreme Court renders a final decision. This is an incorrect reading of *Chicoine.* Chicoine prevailed at the trial court level and, thus, did not suffer "some damage" until a decision was rendered by this Court which reversed the earlier trial court decision in Chicoine's favor. *Id.* at 487, 835 P.2d at 1298. The trial court granted Chicoine's motion for a new trial; Chicoine lost nothing prior to the ruling by this Court.

To the contrary, Fairway did not prevail at the trial court level. As of November 3, 1988, Fairway lost its *right to pursue* the tax assessment claims at trial, regardless of whether those claims were ever found to be of merit. Fairway was then forced to retain other attorneys to prosecute a claim against Petersen and to represent Fairway on the tax assessments because of Petersen's potential conflict of interest in continuing to represent Fairway. Any fees incurred by Fairway thus far in the tax assessment litigation for the years 1980 to 1984 were also lost when those tax claims were dismissed. When the district court dismissed Fairway's tax claims, Fairway's malpractice claim accrued.

█ We recognize Fairway did not know the exact amount of damage suffered due to Petersen's alleged negligence, until the Board of Tax Appeals ruled in Fairway's favor in August, 1989. We also recognize Fairway was still appealing the district court's dismissal of its tax claims in the No-

vember 3, 1988, decision. However, knowledge of the exact amount of damage suffered is not the proper standard used to determine when the cause of action accrues. Because Fairway did not know how much damage it suffered in dollars or which claims could be revived on appeal does not diminish the conclusion that Fairway suffered some actual damage by November 3, 1988.

Accordingly, we hold there is objective proof that Fairway suffered some actual damage when the district court dismissed Fairway's claims on November 3, 1988. The statute of limitations ran on November 3, 1990. Fairway's malpractice claim was not filed until December, 1991, and was time barred.

## II.

### THE ELEMENTS OF ESTOPPEL ARE NOT PRESENT IN THIS CASE

Fairway argues that Petersen should be estopped from asserting the statute of limitations as a defense because Petersen continued to represent Fairway in appealing the district court's decision. It is Fairway's position that because Petersen continued to pursue the appeal, Fairway was induced to await a decision rather than immediately filing suit against Petersen. We do not agree.

█ The doctrine of equitable estoppel in a professional malpractice case requires a showing of: (1) a false representation or concealment of a material fact with knowledge of the truth; (2) the intent that the false representation be relied upon; (3) detrimental reliance upon the false representation causing a delay filing a claim; and (4) the lack of knowledge of the truth, or inability to discover the truth by the person asserting estoppel. *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill,* 103 Idaho 19, 22, 644 P.2d 341, 344 (1982); *Zumwalt v. Stephan, Balleisen & Slavin,* 113 Idaho 822, 825, 748 P.2d 406, 409 (Ct.App.1988).

The facts on appeal, as established in the district court, indicate Petersen did not misrepresent any material fact and Fairway did not rely on Petersen to its detriment. Petersen informed Fairway by letter, of the ad-

verse decision by the court shortly after the decision was rendered. Correspondence between the parties demonstrates Fairway's concern over whether Petersen should even continue to represent Fairway. Further, at least as of March, 1989, Fairway had contacted another law firm concerning the consequences of the district court's decision. Thus the record does not support Fairway's assertion that it delayed filing a malpractice action against Petersen based upon some false representation or concealment by Petersen.

## III.

## THE DOCTRINE OF CONTINUING REPRESENTATION IS SPECIFICALLY BARRED BY STATUTE

Fairway asks this Court to adopt the doctrine of "continuing representation." Under that doctrine the statute of limitations is tolled during the time the attorney continues to represent the client and, therefore, an action does not accrue until the client terminates the relationship with the attorney. The theory is that the client has a "right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." *Greene v. Greene*, 56 N.Y.2d 86, 451 N.Y.S.2d 46, 50, 436 N.E.2d 496, 500 (1982).

The Idaho legislature has specifically precluded extending the statute of limitations based upon any continuing professional relationship. I.C. § 5–219(4) provides that "the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer...." Based upon this clear statement from the legislature, we hold that the doctrine of continuing representation in professional malpractice actions is specifically barred by statute.

## IV.

## THE ISSUE OF CONTINUING NEGLIGENCE HAS NOT BEEN PRESERVED

Although Fairway lists as an issue on appeal whether the law firm's negligence was continuing during the various appeals to the Idaho Supreme Court, it presented no argument on that issue in its briefing and it was not an issue presented to the district court. It is well settled that we will not address issues not raised below and presented for the first time on appeal. *Sandpoint Convalescent v. Dept. of Health*, 114 Idaho 281, 756 P.2d 398 (1988); nor will we consider issues on appeal which are unsupported by argument or authority. *Murray v. Farmers Ins. Co.*, 118 Idaho 224, 796 P.2d 101 (1990).

## V.

## CONCLUSION

We agree that the statute of limitations had run before Fairway commenced its malpractice action against Petersen and we, therefore, affirm the district court's ruling on summary judgment. Both parties requested attorney fees and costs on appeal. Because of the continuing difficulty in determining when a statute of limitations begins to run, we do not believe either party has clearly demonstrated a right to fees. Costs to Petersen on appeal.

McDEVITT, C.J., and BISTLINE, JOHNSON and SILAK, JJ., concur.