95 P.3d 631

**PARSONS PACKING, INC., an Idaho corporation, and Robert A. Parsons, Plaintiffs–Appellants,**

v.

**Reese Bradley MASINGILL, Defendant–Respondent.**

**No. 29926.**

Supreme Court of Idaho, Boise, May 2004 Term.

July 23, 2004.

Ellis, Brown & Sheils, Chartered, Boise, for appellants. Allen B. Ellis argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Mark S. Prusynski argued.

SCHROEDER, Justice.

Parsons Packing, Inc. and Robert A. Parson ("Parsons") seek compensatory damages for legal malpractice arising from Reese Bradley Masingill's ("Masingill") handling of an underlying transaction, i.e., Parsons' leasing with an option to purchase certain onion bins to Pro–Ag Partnership ("Pro–Ag"). Parsons alleges that as a result of Masingill's negligence in failing to place Parsons in a secured position, Parsons was damaged in April of 1998 when Pro–Ag filed bankruptcy and defaulted on the installment payments.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In September of 1992 Parsons contacted Masingill to prepare a Lease with Option to Purchase approximately 15,000 onion bins and related equipment to Pro–Ag. This lease was never executed by the intended parties. Masingill revised and retitled the lease to read "Lease with Agreement to Purchase" ("Agreement") at the request of West One Bank and Parsons. The Agreement was executed on November 12, 1992. The Agreement effected a transfer of ownership interest from Parsons to Pro–Ag. On October 15, 1993, Raymond Phillips and Robert Hert executed a personal guaranty of the lease agreement to purchase, which was also prepared by Masingill. Pro–Ag Inc. made the payments under the lease until after filing a Chapter 11 bankruptcy petition on April 14, 1998, which was converted three months later to a Chapter 7 proceeding. Pro–Ag was not in default of the lease payments until after the bankruptcy petition was filed on April 14, 1998. The complaint against Masingill was filed on April 7, 2000.

Masingill successfully moved for summary judgment on the basis that the complaint was not timely filed under the two-year statute of limitations for malpractice actions provided for in I.C. § 5–219(4). The district court determined that the case paralleled *Lapham*

*v. Stewart,* 137 Idaho 582, 51 P.3d 396 (2002), concluding that the 1992 transfer of the onion bins without the intended security, or adequate security, constituted the injury, not the date of the default payments. Consequently, the district court determined that the two-year statute of limitations began running on November 12, 1992.

## II.

### STANDARD OF REVIEW

In *Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991), this Court reviewed a grant of summary judgment in which the statute of limitations for a cause of action for malpractice had run under the "some damage" rule. The Court stated:

A motion for summary judgment shall be rendered forthwith if the pleading, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56; *Rawson v. United Steelworkers of Am.,* 111 Idaho 630, 726 P.2d 742 (1986); *Schaefer v. Elswood Trailer Sales,* 95 Idaho 654, 516 P.2d 1168 (1973). Standards applicable to summary judgment require the district court and Supreme Court upon review, to liberally construe facts in the existing record in favor of the nonmoving party, and to draw all reasonable inferences from the record in favor of the nonmoving party. *Tusch Enters. v. Coffin,* 113 Idaho 37, 740 P.2d 1022 (1987); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982); *Palmer v. Idaho Bank Trust of Kooskia,* 100 Idaho 642, 603 P.2d 597 (1979). "[M]otions for summary judgment should be granted with caution." *Bailey v. Ness,* 109 Idaho 495, 497, 708 P.2d 900, 902 (1985); *Steele v. Nagel,* 89 Idaho 522, 528, 406 P.2d 805, 808 (1965). If the record contains conflicting inferences or reasonable minds might reach different conclusions, a summary judgment must be denied. *Kline v. Clinton,* 103 Idaho 116, 645 P.2d 350 (1982); *Farmer's Ins. Co. of Idaho v. Brown,* 97

Idaho 380, 544 P.2d 1150 (1976); *Stewart v. Hood Corp.*, 95 Idaho 198, 506 P.2d 95 (1973).

## III.

## APPLICATION OF THE "SOME DAMAGE" RULE

Parsons asserts that Masingill committed malpractice by defective drafting of the agreement and failure to file a UCC–1 financing statement which would have given Parsons protection in the event of Pro-Ag's bankruptcy. Masingill maintains that application of *Anderson v. Glenn*, 139 Idaho 799, 87 P.3d 286 (2003); and *Lapham v. Stewart*, 137 Idaho 582, 51 P.3d 396 (2002), requires a determination that the statute of limitations began to run in 1992 when the property was transferred in a manner not contemplated by Parsons. Parsons asserts that the statute of limitations could not have started to run on November 12, 1992, because damages were not "objectively ascertainable" until the default and bankruptcy of Pro-Ag.

The Court outlined the law applicable to limitations on the commencement of a professional malpractice action in *Lapham v. Stewart*, 137 Idaho 582, 585–86, 51 P.3d 396, 399–400 (2002): "An action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued. Idaho Code § 5–201 & 5–219 (1998)."

"The determination of what constitutes 'damage' for purposes of accrual of an action must be decided on the circumstances presented in each individual case." *Bonz v. Sudweeks*, 119 Idaho 539, 543, 808 P.2d 876, 880 (1991). The issue in this case is whether the failure on the part of Masingill to properly secure Parsons interest in the onion bins constituted "some damage" or whether "some damage" only occurred when Pro–Ag defaulted on the Agreement in 1998.

In *Streib v. Veigel*, 109 Idaho 174, 706 P.2d 63 (1985), accountants prepared flawed tax returns for the years of 1976 through 1980. The errors were discovered in 1982 when new accountants were hired and the Internal Revenue Service (I.R.S.) began levying sanctions. Suit was filed in 1983. *Id.* at 174, 706

P.2d at 63. The Court analogized the situation to:

> [T]he sale of a tainted but frozen piece of meat which is then stored by the purchaser for more than two years before it is prepared and eaten with resultant injuries; or a vintner's sale of a case of wine containing one poisoned bottle, which the customer more than two years later decants and consumes, sustaining tragic injuries as a consequence.

*Id.* at 175, 706 P.2d at 64. The Court held that "the preparation and submission of income tax returns contemplate a review by the Internal Revenue Service, with damages resulting at that time if the returns have been erroneously prepared." *Id.* at 179, 706 P.2d at 68. The negligence occurred when the accountant prepared the statement, but that act did not harm the taxpayer until the I.R.S. processed the return and made an assessment. Similarly, although Parsons was at greater risk because of Masingill's failure to properly secure their interest in the onion bins, there was no quantifiable damage other than the greater risk associated with the transaction.

In *Elliott v. Parsons*, 128 Idaho 723, 918 P.2d 592 (1996), an attorney negligently structured and drafted a transaction for the sale of the Elliott's business which resulted in the failure of the transaction to qualify for installment sales treatment which in turn resulted in increased liability and interest payment to the I.R.S. The Court distinguished Elliott's case from *Streib*, holding that some damage occurred when the Elliotts hired new tax lawyers in 1986 after receiving a 30 day letter from the I.R.S. This accelerated the running of the statute of limitations.

In *Bonz v. Sudweeks*, 119 Idaho 539, 808 P.2d 876 (1991), the defendant attorneys failed to properly record a release of lis pendens on the plaintiffs' land in 1986. This gave rise to a cloud on the title that was discovered by a potential investor and prevented him from following through on a deal with the plaintiff to develop the land, causing the plaintiff to fail to meet other financial obligations in 1988. *Id.* at 539–40, 808 P.2d

at 876–77. The Court made the following analysis:

> Our review of the record clearly demonstrates that the damage to the plaintiffs did not occur when the release of lis pendens was mistakenly recorded in Lincoln County. Rather, the damage occurred in March, 1987, when the investor learned of the cloud on the Jerome County property and thereafter refused to participate in a venture to develop the property. It was at the time the investor refused to participate financially in the property development that plaintiffs were damaged, rather than at the time the release was inadvertently filed in the wrong county.

*Id.* at 543, 808 P.2d at 879. Although the plaintiff conceivably suffered damage because their land had less value once it was improperly recorded, the incident of malpractice did not affect the plaintiff until it interfered with the deal with a third party.

In *Fairway Dev. Co. v. Petersen, Moss, Olsen, Meacham Carr,* 124 Idaho 866, 865 P.2d 957 (1993), the plaintiff hired legal counsel to challenge local tax assessments in the district court, but the attorney failed to exhaust the administrative remedies available before proceeding in the district court. The case was subsequently dismissed in 1988, and the action was barred because the time had run to file an administrative complaint. This Court upheld the dismissal in 1990. *Id.* at 867–868, 865 P.2d at 958–59. The plaintiff filed suit in 1991 for malpractice, claiming the 1990 decision of this Court as the point of some damage. This Court held that the 1988 dismissal was the point of some damage because:

> The loss of the right to pursue post-confirmation interest was "some damage" and the creditor's malpractice claim against its attorney for failing to request post-confirmation interest was deemed accrued as of the date of confirmation.

*Id.* at 869, 865 P.2d at 960 (citing *Treasure Valley Bank,* 112 Idaho at 357, 732 P.2d at 326).

*Lapham v. Stewart,* 137 Idaho 582, 51 P.3d 396 (2002), involved a claim of legal malpractice when an attorney's secretary erroneously disbursed the entirety of loan proceeds from the attorney's trust account. The funds were to be disbursed incrementally. The Court found that the client suffered damage when the unauthorized disbursement occurred, which began the running of the statute of limitations. The client argued that damage did not occur until the unpaid balance of the loan became due. The consequence of the Court's decision was that the claim for legal malpractice was time barred.

The cases that are closest to the situation presented in this case are *Streib v. Veigel* and *Bonz v. Sudweeks.* In *Streib,* the Court determined that the negligence occurred when the accountant prepared the statement, but that act did not harm the taxpayer until the I.R.S. processed the return and made an assessment. *Streib* is similar to this case in that the error committed by Masingill did not result in any harm until Pro–Ag defaulted on the agreement. Parsons entered into the Agreement as part of a normal lease and sale transaction and had Pro–Ag not defaulted, each party would have received the intended benefit of the bargain. The onion bins were exchanged for a promise on the part of Pro–Ag to make the agreed payments, which they did until 1998. Although it is true that steps could have been taken to secure Parsons' interest in the bins in the event of Pro–Ag's insolvency, bankruptcy was not contemplated and would have been mere speculation in 1992 when the Agreement was executed. Although they were subjected to a greater risk, the Parsons were not damaged by the lack of security in the bins until Pro–Ag's bankruptcy. The potential of Pro–Ag's bankruptcy to Parsons is analogous to the overhanging risk of a tax audit to the plaintiff in *Streib.* Likewise, Parsons was in a similar position to that of the plaintiff in *Bonz* involving an improperly recorded title which eventually resulted in diminished property value. In each of these cases negligence did not result in damage, only the potential for damage which occurred at a later date. The situation in this case is analogous. For application of the statute of limitation some damage did not occur in 1992. Some damage occurred the date of default, April 14, 1998. The filing of the complaint on April 7, 2000 was timely.

## IV.

## CONCLUSION

The grant of summary judgment is reversed.   Parsons is awarded costs.

Chief Justice TROUT, Justices KIDWELL, EISMANN and BURDICK concur.