201 P.3d 629

**CITY OF McCALL, a municipal corporation, Plaintiff–Appellant,**

v.

**Susan E. BUXTON; Moore, Smith, Buxton & Turke Chartered, a professional service corporation; William A. McCurdy; and Brassey, Wetherell, Crawford & Garrett, a limited liability partnership, Defendants–Respondents.**

No. 34609.

Supreme Court of Idaho,
Boise, November 2008 Term.

Jan. 22, 2009.

Ellis, Brown & Sheils, Chartered, Boise, and Strother Law Office, Boise, for appellant. Jeffrey Strother argued.

Hawley Troxell Ennis & Hawley LLP, Boise, for respondents Susan E. Buxton and Moore, Smith, Buxton & Turke Chartered. Craig Meadows argued.

Elam & Burke, P.A., Boise, for respondents William A. McCurdy and Brassey, Wetherell, Crawford & Garrett. Jeffrey Thomson argued.

EISMANN, Chief Justice.

This is an appeal from a judgment dismissing an action for legal malpractice on the ground that it was barred by the statute of limitations. We hold that for two of the claims, there was not objective proof of damage to start the running of the statute of limitations until the jury verdict in the case in connection with which the malpractice allegedly occurred.

## I. FACTS AND PROCEDURAL HISTORY

On May 11, 2000, the City of McCall (City) entered into a contract with St. Clair Contractors, Inc., (St. Clair) for the construction of a storage lagoon to hold treated effluent. The City also contracted with J–U–B Engineers, Inc. (J–U–B) to be the project engineer overseeing the work. The City was represented by Susan Buxton (Buxton) and William McCurdy (McCurdy), attorneys at law, throughout the construction project. For convenience, we will use the word "Attorneys" to refer to Buxton and McCurdy and their respective law firms of Smith, Buxton & Turke, Chartered, and Brassey, Wetherell, Crawford & Garrett, LLP, for-

merly known as Brassey, Wetherell, Crawford & McCurdy, LLP.

St. Clair encountered various delays during the course of the construction, and the City concluded that St. Clair was not performing according to the terms of the contract. On the alleged advice of its Attorneys, the City terminated its contract with St. Clair on February 12, 2001.

Employers Insurance of Wausau (Wausau) had issued a performance bond for St. Clair, and it hired a replacement contractor to complete the project. The City concluded that the replacement contractor's work was deficient. Again, on the alleged advice of its Attorneys, the City decided in June 2001 to withhold payments to Wausau for its replacement contractor and to hire another contractor.

On December 20, 2001, Wausau filed an action in federal district court to recover against the City for wrongfully demanding payment under the performance bond and withholding payments and against St. Clair pursuant to an indemnity agreement. The Attorneys represented the City throughout the litigation in district court. In January 2002, the City began incurring defense costs in the Wausau lawsuit. On April 12, 2002, St. Clair filed a cross-claim against the City. Allegedly on the advice of its Attorneys, the City released J–U–B from any liability on July 25, 2002.

On May 4, 2004, the jury awarded a total of $4,955,096 in damages against the City. After the district court denied the City's motion for a new trial, the City hired another attorney to prosecute an appeal, which was not successful.

On May 3, 2006, the City filed this action against the Attorneys. In its first amended complaint, the City alleged: (a) Count One, the Attorneys negligently advised the City to terminate its contract with St. Clair; (b) Count Two, the Attorneys negligently ad-

vised the City to release any of its claims against J–U–B arising from its role as project engineer for the construction project; (c) Count Three, the Attorneys negligently advised the City to withhold payments from Wausau and hire another contractor in place of Wausau's replacement contractor; (d) Count Four, the Attorneys negligently failed to advise the City of a conflict of interest regarding their advice to release J–U–B from liability and to advise the City to seek advice from independent counsel; (e) Count Five, the Attorneys negligently advised the City not to accept Wausau's offer to settle with the City for $500,000; and (f) Count Six, the Attorneys have been unjustly enriched in the amount of legal fees paid for their services in the litigation against the City.

The Attorneys moved for summary judgment on two grounds: the decision to sue the Attorneys was made by the city manager who lacked that authority and the City's cause of action against the Attorneys was barred by the statute of limitations. The City responded that the city manager had implied authority to commence this litigation and that his action had subsequently been approved by the city council. The City also contended that the running of the statute of limitations had been tolled under the doctrine of equitable estoppel.

When deciding the motions for summary judgment, the district court addressed the allegations in the City's first amended complaint.[1] The district court rejected the equitable estoppel claim and held that the claims against the Attorneys were barred by Idaho Code § 5–219(4), the applicable statute of limitations. Based upon its decision that all claims alleged in the first amended complaint were barred by the statute of limitations, the district court held it would not decide the issue of whether commencement of this litigation had not been properly approved by the city council.

---

1. Prior to the motions for summary judgment, the City filed a second amended complaint, which added an allegation that the Attorneys negligently failed to advise the City that under certain circumstances the deadline for completion of a construction contract could be extended. The district court did not address this allega-

tion, possibly because the Attorneys had filed answers to the first amended complaint before the City filed its second amended complaint, and it could not then file that complaint without leave of court, I.R.C.P. 15(a), which leave the City apparently did not obtain.

On July 9, 2007, the district court entered a judgment dismissing all claims against the Attorneys. The City timely filed a motion for reconsideration, which the district court denied. On September 24, 2007, the City timely filed a notice of appeal. The Attorneys had requested an award of attorney fees, which the City objected to. After the matter was heard, the district court awarded Buxton and her law firm $58.00 in costs and $26,731.00 in attorney fees pursuant to Idaho Code § 12–120(3), and it awarded $58.00 in costs and $30,285.00 in attorney fees to McCurdy and his law firm pursuant to Idaho Code § 12–120(3). On November 2, 2007, the court entered an amended judgment including the awards of costs and attorney fees.

## II. ISSUES ON APPEAL

1. Did the district court err in holding that the City's claims were barred by the statute of limitations?

2. Did the district court err in holding that the statute of limitations did not bar the Attorneys from asserting the doctrine of equitable estoppel as a defense?

3. Did the district court err in awarding the Attorneys attorney fees pursuant to Idaho Code § 12–120(3)?

4. If the City's claims are not barred by the statute of limitations, should this Court uphold the district court on the alternative ground that the city manager did not have authority to commence this lawsuit and, if not, that the city council lacked authority to later ratify that act?

5. Are the Attorneys entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12–120(3)?

## III. ANALYSIS

### A. Did the District Court Err in Holding that the City's Claims Were Barred by the Statute of Limitations?

"An action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued." *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002); I.C. §§ 5–201 & 5–219(4). The cause of action for professional malpractice accrues "as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer." I.C. § 5–219(4).

This Court has held that a cause of action for professional negligence cannot accrue until some damage has occurred. *Stephens v. Stearns*, 106 Idaho 249, 254, 678 P.2d 41, 46 (1984). The reason for the "some damage" rule is that "in order to recover under a theory of negligence, the plaintiff must prove actual damage." *Id.* "Until some damage occurs, a cause of action for professional malpractice does not accrue. Therefore, some damage is required because it would be nonsensical to hold that a cause of action is barred by the statute of limitations before that cause of action even accrues." *Lapham v. Stewart*, 137 Idaho 582, 586, 51 P.3d 396, 400 (2002) (Citations omitted). Obviously, the "some damage" that has occurred must be damage that the client could recover from the professional in an action for malpractice.

Potential harm or an increase in the risk of damage is not sufficient to constitute some damage. For example, in *Parsons Packing, Inc. v. Masingill*, 140 Idaho 480, 95 P.3d 631 (2004), the seller of about 15,000 onion bins had its attorney draft an installment sale contract to convey the bins to a buyer. The attorney failed to file a UCC–1 financing statement to perfect his client's security interest in the property. The buyer made the payments due on the contract for almost four and one-half years until after it filed for bankruptcy protection under Chapter 11 of the bankruptcy code. The case was later converted to a proceeding under Chapter 7. Just less than two years after the buyer filed bankruptcy, the seller brought an action against his attorney to recover damages. The district court granted the attorney summary judgment on the ground that the statute of limitations began running when the onion bins were sold without adequate securi-

ty. This Court reversed, holding that although the seller was subject to greater risk of nonpayment by not having a perfected security interest, it did not suffer damage until the buyer filed bankruptcy. 140 Idaho at 483, 95 P.3d at 634. The attorney's negligence in failing to file the financing statement in order to perfect his client's security interest created only the potential for damage, which occurred when the buyer filed bankruptcy.

Likewise, in *Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991), landowners did not suffer damage when their attorneys failed to properly file a release of a lis pendens regarding the landowners' development property, thereby allowing the lis pendens to remain as a cloud on the title to their property. They suffered damage about a year later when an investor withdrew his $300,000 offer to invest in the development because of the existing lis pendens.

In *Chicoine v. Bignall,* 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992), this Court held that an "objectively ascertainable damage" rule previously applied to a medical malpractice case also applied to all actions for "professional malpractice." "[A]n action for professional malpractice shall be deemed to have accrued for the purposes of I.C. § 5–219(4) only when there is objective proof that would support the existence of some actual damage." *Id.*

In *Chicoine,* an attorney represented Chicoine in a lawsuit brought against him and others that resulted in a jury verdict for damages against Chicoine in 1983. Chicoine's attorney timely filed a motion for a judgment notwithstanding the verdict (J.N.O.V.). He later filed a motion for a new trial. The district court entered an order granting the motion for a J.N.O.V., but this Court reversed that order on appeal. *O'Neil v. Schuckardt,* 112 Idaho 472, 733 P.2d 693 (1986) (*O'Neil I* ). On remand, the district court considered and granted the motion for new trial. On a second appeal, in an opinion issued on July 11, 1989, this Court reversed the grant of a new trial on the ground that Chicoine's attorney had not filed the motion within the time limit required by the applicable rule of civil procedure. *O'Neil v. Schuck-*

*ardt,* 116 Idaho 507, 777 P.2d 729 (1989) (*O'Neil II* ).

In December 1989, Chicoine brought an action for malpractice against his attorney. Even though he had incurred attorney fees in defending the action after his attorney's negligent act in failing to timely request a new trial, this Court held that "there was no objective proof of some actual damage to Chicoine until this Court reversed the order granting a new trial in *O'Neil II.*" 122 Idaho at 487, 835 P.2d at 1298.

This Court also applied the "objective proof of some damage" standard in *Fairway Development Co. v. Petersen, Moss, Olsen, Meacham & Carr,* 124 Idaho 866, 865 P.2d 957 (1993). Fairway Development retained an attorney named Petersen in 1980 to challenge the assessor's appraisal of its property. Over the next several years, Petersen filed challenges with the Board of Equalization and notices of appeal to the Board of Tax Appeals. The attorney also filed actions seeking refunds of taxes paid under protest. When the district court denied Fairway Development's motion for partial summary judgment, Fairway Development sought an interlocutory appeal. This Court initially granted the interlocutory appeal and heard oral argument on the case. Later, on September 16, 1986, we dismissed the appeal as having been improvidently granted. *Fairway Development Co. v. Bannock County,* 111 Idaho 653, 726 P.2d 765 (1986) (*Fairway I* ).

The case was remanded to the district court. After the court dismissed Fairway Development's challenge to its assessments, Fairway Development appealed again. On February 23, 1988, this Court reversed the dismissal and remanded the case back for review of the appraisal method used by the county. *Fairway Development Co. v. Bannock County,* 113 Idaho 933, 750 P.2d 954 (1988) (*Fairway II* ).

On remand, the district court did not reach the issue of the proper method of appraisal. Instead, on November 3, 1988, the court dismissed the claims on the ground that Fairway Development had failed to exhaust its administrative remedies years earlier.

Fairway Development appealed, and on November 28, 1990, this Court upheld the dismissal. *Fairway Development Co. v. Bannock County,* 119 Idaho 121, 804 P.2d 294 (1990) (*Fairway III*). The only issue on that appeal was Fairway's challenge to the 1981 tax assessment, which was heard by the Board of Equalization and the Board of Tax Appeals, but was not appealed to the district court within thirty days as required by Idaho Code § 63–3812 (1989). 119 Idaho at 124, 804 P.2d at 297. Fairway Development had not filed an action in district court until 1983. *Id.*

On December 12, 1991, Fairway Development filed suit against Petersen. The case was dismissed based upon the statute of limitations, and Fairway Development appealed. This Court held that Fairway Development's malpractice claim accrued on November 3, 1988. It stated, "Accordingly, we hold there is objective proof that Fairway Development suffered some actual damage when the district court dismissed Fairway Development's claims on November 3, 1988." 124 Idaho at 869, 865 P.2d at 960. Fairway Development had been incurring attorney fees litigating its challenge to the 1981 assessment for over five years. Nevertheless, this Court held that the cause of action for malpractice did not accrue until there was objective proof of the malpractice, which occurred when the action was dismissed on November 3, 1988, for the attorney's failure years earlier to exhaust Fairway Development's administrative remedies by filing a timely appeal to the district court.

■ These cases stand for the following. The statute of limitations for professional malpractice does not begin to run until the plaintiff would have a cause of action against the professional. *Stephens v. Stearns,* 106 Idaho 249, 254, 678 P.2d 41, 46 (1984). Because some damage is required to have a cause of action for negligence, the cause of action cannot accrue until there is some damage. *Id.* "[S]ome damage is required because it would be nonsensical to hold that a cause of action is barred by the statute of limitations before that cause of action even accrues." *Lapham v. Stewart,* 137 Idaho 582, 586, 51 P.3d 396, 400 (2002). Negligence

that increases the risk that a client will be harmed does not trigger the running of the statute of limitations until harm actually occurs. *Parsons Packing, Inc. v. Masingill,* 140 Idaho 480, 95 P.3d 631 (2004).

■ In addition, there must be objective proof that would support the existence of some actual damage. *Chicoine v. Bignall,* 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992). A client simply incurring attorney fees for the attorney who negligently represents the client in particular litigation will not by itself be objective proof which would support the existence of some damage suffered by the client in that litigation. *Fairway Development Co. v. Petersen, Moss, Olsen, Meacham & Carr,* 124 Idaho 866, 865 P.2d 957 (1993); *Chicoine v. Bignall,* 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992). Under the circumstances of these cases, objective proof did not occur until there was a court decision adverse to the client because of the attorney's negligence.

**Counts One and Three of the First Amended Complaint.** In Count One, the City alleged that the Attorneys negligently advised the City to terminate its contract with St. Clair, and in Count Three it alleged that the Attorneys negligently advised the City to withhold payments from Wausau and hire another contractor in place of Wausau's replacement contractor. Relying primarily upon our holding in *Griggs v. Nash,* 116 Idaho 228, 775 P.2d 120 (1989), and a statement from our opinion in *Chicoine v. Bignall,* the district court held that these two causes of action accrued when the City began incurring costs in defending the claims brought against it by St. Clair and Wausau. The district court stated:

As acknowledged by the *Chicoine* Court, the Idaho Supreme Court has previously held that "some damage" occurs for the purposes of Idaho Code § 5–219(4) when attorney fees are paid to defend a lawsuit that resulted because of the alleged malpractice of a lawyer. As stated by the Chicoine Court, "[t]he existence of the damage [does] not depend on the outcome of the lawsuits, since only 'some damage' is necessary for the action to accrue under I.C. § 5–219(4)."

. . . . The Plaintiff's were on notice from the pleadings filed by Wausau that Wausau was claiming that the actions that the Plaintiff took, allegedly based upon the legal advice from the Defendants, were actionable in a court of law. Once the payment of legal fees was incurred in the defense of Wausau's claims the statute of limitations began to run. (Citations omitted.)

In *Bonz v. Sudweeks*, 119 Idaho 539, 543, 808 P.2d 876, 880 (1991), this Court stated, "The determination of what constitutes 'damage' for purposes of accrual of a cause of action must be decided on the circumstances presented in each individual case." 119 Idaho at 543, 808 P.2d at 880. Likewise, what constitutes "objective proof" of the existence of some damage suffered by the client also must be decided on the circumstances of each case.

Although we stated in *Chicoine* that "[t]he existence of the damage did not depend on the outcome of the lawsuits, since only 'some damage' is necessary for the action to accrue under I.C. § 5-219(4)," in that case the existence of some damage actually did depend upon the outcome of the lawsuit. We held, "Chicoine asserts that the action against Bignall did not accrue pursuant to I.C. § 5-219(4) until July 1989, when this Court reversed the trial court's granting of a new trial. We agree." 122 Idaho at 487, 835 P.2d at 1298. The negligence of Chicoine's attorney had occurred years earlier, but there was not objective proof of the damage until this Court later reversed the grant of a new trial, terminating the lawsuit.

The circumstances of this lawsuit also differ from those in *Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989). In that case, Equity Mortgage Services, Inc. (EMSI) agreed to broker a transaction in which the Griggses would loan the Nashes $35,000 to be secured by a deed of trust on the Nashes' house. EMSI's sole owner and manager, Van Gelder, told the Griggses that the house was worth at least $65,000. EMSI retained the services of Trout to close the loan transaction in May 1984.

After the transaction closed, the Nashes did not make any payments on their loan. In a letter to them dated October 4, 1984, EMSI blamed Trout for problems that had arisen, including failing to disclose information he had learned regarding the property while representing the Nashes on a prior sale that required a foreclosure. Trout had allegedly learned that the property appraised for only $31,800.

On July 30, 1985, the Griggses sued EMSI, Van Gelder, and others, but not Trout. One of the claims asserted against EMSI and Van Gelder was that the property was worth only $31,800, that they had negligently failed to investigate its value, and that they had misrepresented the value as being $65,000. EMSI waited until September 23, 1987, before filing its third-party claim against Trout. This Court held that EMSI and Van Gelder's claim against Trout accrued by at least September 9, 1985, because at that point they were incurring attorney fees while defending the Griggs' lawsuit. 116 Idaho at 234, 775 P.2d at 126.

In *Griggs*, Trout was only retained to close the loan transaction; he was not representing EMSI or Van Gelder in any subsequent legal proceedings. *Griggs* was not a case, like *Fairway Development* and *Chicoine*, in which Trout was retained to represent EMSI and Van Gelder in an ongoing legal dispute during which he allegedly gave negligent advice.

■ The mere fact that Wausau and St. Clair commenced litigation against the City would not have given the City a cause of action against its Attorneys. The giving of legal advice often carries with it the risk of litigation. The fact that the City was sued does not, by itself, constitute a breach of duty by the City's Attorneys. Had the City attempted to sue its Attorneys because it had been sued after following their advice, the City would not necessarily have been entitled to recover. For example, it would be difficult to conceive of a situation in which the City could have recovered on a malpractice claim against its Attorneys had the City prevailed in the litigation. Even when an attorney is negligent, that breach of duty may not be a proximate cause of the resulting damage

to the client. *Marias v. Marano,* 120 Idaho 11, 13, 813 P.2d 350, 352 (1991).

Under the circumstances of this case, the existence or effect of any alleged negligence on the part of the City's Attorneys regarding their legal advice and strategy depended upon the outcome of the litigation against the City by Wausau and St. Clair. There would not be objective proof of actual damage until that occurred. *Fairway Development Co. v. Petersen, Moss, Olsen, Meacham & Carr,* 124 Idaho 866, 865 P.2d 957 (1993); *Chicoine v. Bignall,* 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992). To hold otherwise in this case "would foment future litigation initiated on sheer surmise of potential damages in order to avoid the likely consequence of seeing actions barred by limitations." *Mack Financial Corp. v. Smith,* 111 Idaho 8, 12, 720 P.2d 191, 195 (1986). Clients involved in lengthy litigation would have to file protective lawsuits against their attorneys when following their advice and strategy, without yet having any objective proof of actual damage or being able to prove a cause of action for professional malpractice.

Therefore, the district court erred by granting summary judgment as to Counts One and Three. However, this analysis only applies to Counts One and Three of the first amended complaint.

■ **Counts Two and Four of the First Amended Complaint.** In Count Two, the City alleged that its attorneys negligently advised the City to release any of its claims against J–U–B arising from its role as project engineer for the construction project, and in Count Four, the City alleged that the Attorneys negligently failed to advise the City of a conflict of interest regarding their advice to release J–U–B from liability and to advise the City to seek advice from independent counsel. On July 25, 2002, the City released J–U–B from liability. That was the date on which the City lost its opportunity to recover against J–U–B, and the date on which the damage occurred if the Attorneys negligently advised the City to release J–U–B from liability or breached a duty by failing to advise the City to seek advice from independent counsel before releasing J–U–B. *Treasure Valley Bank v. Killen & Pittenger,*

P.A., 112 Idaho 357, 359, 732 P.2d 326, 328 (1987). Assuming the City had a claim against J–U–B, the City had objectively ascertainable damage when it released that claim. At that point, it gave up whatever cause of action it had against J–U–B. The statute of limitations began running at that point. Because the City did not file this action until May 3, 2006, these two claims are barred by the two-year statute of limitations.

■ **Count Five of the First Amended Complaint.** In Count Five, the City alleged that the Attorneys negligently advised the City not to accept Wausau's offer to settle with the City for $500,000. When the offer was rejected in September 2003, the City lost its opportunity to settle this case for that amount. That was the date on which the City would have suffered objectively ascertainable damage from the alleged negligence of its attorneys in advising it to reject that offer. *Treasure Valley Bank v. Killen & Pittenger, P.A.,* 112 Idaho 357, 359, 732 P.2d 326, 328 (1987). Because the City did not file this action until May 3, 2006, this claim was barred by the two-year statute of limitations.

**Count Six of the First Amended Complaint.** In Count Six, the City alleged that the Attorneys have been unjustly enriched in the amount of legal fees paid for their services in the litigation against the City. The district court dismissed this claim, stating, "Although styled as a claim of unjust enrichment, Count Six is clearly premised upon legal malpractice." The City has not challenged that holding on appeal. Therefore, we uphold the district court's ruling that the doctrine of unjust enrichment does not provide the City with an independent cause of action under the facts of this case.

**B. Did the District Court Err in Holding that the Doctrine of Equitable Estoppel Did Not Bar the Attorneys from Asserting the Statute of Limitations as a Defense?**

■ "The only non-statutory bar to a statute of limitation defense in Idaho is the doctrine of equitable estoppel." *J.R. Simplot Co. v. Chemetics Int'l, Inc.,* 126 Idaho 532,

534, 887 P.2d 1039, 1041 (1994). The elements of equitable estoppel are as follows:

> (1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

*Id.* Equitable estoppel does not eliminate, toll, or extend the statute of limitations. *Ferro v. Society of Saint Pius X,* 143 Idaho 538, 540, 149 P.3d 813, 815 (2006). It merely bars a party from asserting the statute of limitations as a defense for a reasonable time after the party asserting estoppel discovers or reasonably could have discovered the truth. *Id.* Since we have held that Counts Two, Four, and Five of the First Amended Complaint are barred by the statute of limitations, we must address the City's claim that equitable estoppel prevented the running of the statute of limitations as to these counts prior to the filing of this lawsuit.

The district court held that the City failed to produce evidence supporting its claim of equitable estoppel. The court stated as follows:

> The Court finds there is neither evidence in the record nor any proffered by the Plaintiff suggesting the Defendants in this case made a false representation or concealed a material fact that the Defendants had actual or constructive knowledge of being untrue. There is no evidence in this case warranting the inference that the Defendants knew the Plaintiff was in breach of contract with St. Clair. Put differently, there simply is no evidence establishing or permitting the Court to reasonably infer that the Defendants concealed any material facts or made any false representations which lulled the Plaintiff into inaction during the statutory period. Additionally, there is no evidence before the Court establishing the Plaintiff relied

on any representations by the Defendants in waiting to file this action.

On appeal, the City does not point to evidence showing that the Attorneys made a false representation or concealed a material fact with actual or constructive knowledge of the truth. It argues the district court should have inferred that the Attorneys did so. According to the City, attorneys are presumed to know the law. If an attorney errs in advising a client as to the applicable law or in predicting the strength of the opposing side's case, we should infer that the attorney did so knowing that such advice was false.

■■■ "Generally, a statement about a future event does not constitute a misrepresentation. A misrepresentation must be as to a past or existing fact." *Ferro,* 143 Idaho at 544, 149 P.3d at 819 (citations omitted). Absent evidence supporting the inference, the district court did not err in concluding that the City had failed to produce evidence showing that its Attorneys had made a false representation or concealed a material fact with actual or constructive knowledge of the truth when they advised the City before and during the litigation with St. Clair and Wausau. The district court did not err in granting summary judgment that the City had failed to produce evidence supporting its claim of equitable estoppel.

**C. Did the District Court Err in Awarding the Attorneys attorney fees pursuant to Idaho Code § 12–120(3)?**

The district court awarded the Attorneys attorney fees pursuant to that portion of Idaho Code § 12–120(3), which provides, "In any civil action to recover … in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." The statute defines a "commercial transaction" as "all transactions except transactions for personal or household purposes." Based upon our recent opinion in *Blimka v. My Web Wholesaler, LLC,* 143 Idaho 723, 152 P.3d 594 (2007), the district court held that this lawsuit was an action to recover in a commercial transaction. Although we will be vacating the judgment and award of attorney

fees, we will address the applicability of Section 12–120(3) because that issue will arise on remand. *Silver Creek Computers, Inc. v. Petra, Inc.*, 136 Idaho 879, 883, 42 P.3d 672, 676 (2002).

In *Fuller v. Wolters*, 119 Idaho 415, 425, 807 P.2d 633, 643 (1991), this Court held that Section 12–120(3) did not apply to legal malpractice actions, stating, "We agree with the trial court's statement that under our present statute, 'tort actions are essentially actions in which the parties bear their own attorney's fees, regardless of [who] prevail[ed].'" In so holding, the Court did not engage in any analysis of the wording of the statute.

The first portion of Idaho Code § 12–120(3) only provides for the awarding of attorney fees in actions to recover on what would be contract actions. It begins, "In any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, or contract relating to the purchase or sale of goods, wares, merchandise, or services...." However, the latter portion of the statute does not contain any such limitation. It mandates the awarding of a reasonable attorney's fee to the prevailing party "in any commercial transaction." The latter portion of the statute is not limited to contract actions. It "does not require that there be a contract between the parties before the statute is applied; the statute only requires that there be a commercial transaction." *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 472, 36 P.3d 218, 224 (2001). As we stated in *Blimka v. My Web Wholesaler, LLC*, 143 Idaho 723, 728–29, 152 P.3d 594, 599–600 (2007):

> From time to time the Court has denied fees under I.C. § 12–120(3) on the commercial transaction ground either because the claim sounded in tort or because no contract was involved. The commercial transaction ground in I.C. § 12–120(3) neither prohibits a fee award for a commercial transaction that involves tortious conduct, nor does it require that there be a contract. Any previous holdings to the contrary are overruled.

The district court correctly held that following our decision in *Blimka*, *Fuller v. Wolters* is overruled.

**D. If the City's Claims Are Not Barred by the Statute of Limitations, Should this Court Uphold the District Court on the Alternative Ground that the City Manager Did Not Have Authority to Commence this Lawsuit and, if not, that the City Council Lacked Authority to Later Ratify that Act?**

The decision to file this lawsuit against the City's former Attorneys was made by the McCall City Manager without the prior approval of the City Council. The Attorneys contend that the City Manager lacked the authority to make that decision under Idaho's open meeting laws. Although the City Council later ratified the decision in a vote conducted in accordance with the open meeting laws, the Attorneys contend that such ratification is of no effect because the City cannot ratify a void act. The district court did not address this issue because it ruled that the City's claim was barred by the statute of limitations. On appeal, the Attorneys argue that if we determine that the district court erred in dismissing the City's complaint pursuant to the statute of limitations, we can uphold the dismissal on this ground. The parties have briefed and argued this issue, and because it will be an issue on remand we will address it.

Idaho Code § 50–811 provides that the city manager is "the administrative head of the city government under the direction and supervision of the council" and has "general supervision over the business of the city." The City argues that these statutory provisions include the authority to authorize the commencement of this lawsuit. The authority that can be exercised by a city manager must be considered in context with Idaho's open meeting laws.

Idaho's open meeting laws are codified at Idaho Code §§ 67–2340 through 67–2347. Section 67–2340 "declares that it is the policy of this state that the formation of public policy is public business and shall not be conducted in secret." Although the statutes do not define what constitutes "the formation

of public policy," they do provide some guidance as to what that phrase means.

In this case, the governing body of the City is the city council. I.C. § 50–805. With few exceptions, a "decision" of a governing body must be made by voting at meetings open to the public. I.C. § 67–2342(1). Idaho Code § 67–2341(1) defines a "decision" as "any determination [or] action . . . on which a vote of a governing body is required . . ., but shall not include ministerial or administrative actions necessary to carry out a decision previously adopted in a meeting held in accordance with sections 67–2342 through 67–2346, Idaho Code." Thus, the governing body is not required to vote on "ministerial or administrative actions" that are necessary to carry out decisions previously reached in accordance with the open meeting laws. If an action cannot be characterized as "ministerial or administrative" in order to carry out a prior decision of the governing board, then the action must be previously approved by the governing board in accordance with the open meeting laws.

In *Farrell v. Board of Comm'rs, Lemhi County,* 138 Idaho 378, 389, 64 P.3d 304, 315 (2002), we held that a decision to settle litigation must be made by the governing board in accordance with requirements of the open meeting laws. The corollary of that holding is that the decision to settle litigation is not a ministerial or administrative act. If the decision to settle a lawsuit is not a ministerial or administrative decision, then the decision to file a lawsuit is likewise not a ministerial or administrative decision. It is a policy decision that must be made by the governing board pursuant to the open meeting laws. The city manager is appointed by the city council as the "administrative head of the city government under the direction and supervision of such council," I.C. § 50–811, not as the city's policymaker. The City's city manager had no authority to make the decision to file this lawsuit. That was a decision that had to be made by the city council in accordance with the requirements of the open meeting laws.[2]

On May 24, 2007, the city council ratified the filing of this lawsuit at a meeting held in compliance with the open meeting laws. The Attorneys argue that such action cannot operate to authorize a decision that was not initially made in conformity with the open meeting laws. Idaho Code § 67–2347(1) provides, "If an action, or any deliberation or decision-making that leads to an action, occurs at any meeting which fails to comply with the provisions of sections 67–2340 through 67–2346, Idaho Code, such action shall be null and void." Relying upon *Worlton v. Davis,* 73 Idaho 217, 249 P.2d 810 (1952), the Attorneys contend that a "null and void" act cannot be ratified.

The *Worlton* case does not support the Attorneys' argument. In *Worlton,* the plaintiffs brought an action to enforce a covenant not to compete in an employment contract entered into between a physician and a partnership. One of the members of the partnership when the contract was made had been a layperson, who acted as the partnership's business manager. The employment contract gave the layperson the right to supervise the physician, resulting in the layperson having the right to attempt to practice medicine through a licensed employee. This Court held that the employment contract was therefore void as against public policy and that it could not be validated by estoppel or ratification based upon the physician's continued employment after the retirement of the layperson.

In *Worlton,* the contract itself was void as against public policy because it enabled a layperson to practice medicine without a license. The Court held that in such circumstances, it will leave the parties in the identical position in which it finds them and not enforce the contract. The contract between the City and its current attorneys is not contrary to public policy. There is no public policy prohibiting a city from hiring legal counsel, or banning it from filing a legal malpractice action against its former Attorneys.

---

2. There is no contention that the city council had previously made a policy decision establishing guidelines setting forth the circumstances under which the city manager could file lawsuits without the prior approval of the city council.

 The city manager was an agent of the city council. A principal may ratify the unauthorized act of its agent, with the effect being essentially the same as if the act had been authorized when it occurred. *Manning v. Twin Falls Clinic & Hospital, Inc.*, 122 Idaho 47, 54, 830 P.2d 1185, 1192 (1992). In *State v. City of Hailey*, 102 Idaho 511, 514, 633 P.2d 576, 579 (1981), this Court held,

> where deliberations are conducted at a meeting violative of the Open Meetings Act but no firm and final decision is rendered upon the questions then discussed, the impropriety of that meeting will not taint final actions subsequently taken upon questions conscientiously considered at subsequent meetings which do comply with the provisions of the act.

Likewise, in *Petersen v. Franklin County*, 130 Idaho 176, 181, 938 P.2d 1214, 1219 (1997), this Court held that actions taken in violation of the open meeting laws are not void unless they are challenged timely as provided in Idaho Code § 67–2347(4). There is nothing in the open meeting laws that would prevent a governing board from later ratifying an unauthorized act by its agent. Therefore, the fact that the city manager did not have authority to authorize the commencement of this lawsuit does not require dismissal where the city council later ratified that action in a meeting that complied with the open meeting laws.

**E. Are the Attorneys Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12–120(3)?**

The Attorneys seek an award of attorney fees on appeal pursuant to Idaho Code § 12–120(3). Because we are vacating the judgment and remanding this case for further proceedings, any determination of the prevailing party is premature until the case is finally resolved. *MBNA America Bank, N.A. v. Fouche*, 146 Idaho 1, 4, 189 P.3d 463, 466 (2008).

**IV. CONCLUSION**

We vacate the judgment of the district court. We affirm the dismissal of Counts Two, Four, Five and Six of the First Amended Complaint, and we remand this case for further proceedings that are consistent with this opinion.

Justices BURDICK, J. JONES, W. JONES and Justice Pro Tem KIDWELL concur.