# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 41663

| | |
|---|---|
| WALTER C. MINNICK and A.K. LIENHART MINNICK, husband and wife, | ) ) |
| | ) **Boise, December 2014 Term** |
| Plaintiffs-Appellants, | ) |
| | ) **2015 Opinion No. 1** |
| v. | ) |
| | ) **Filed: January 9, 2015** |
| HAWLEY TROXELL ENNIS AND HAWLEY, LLP, an Idaho limited liability partnership, GEOFFREY M. WARDLE, individually, | ) ) **Stephen W. Kenyon, Clerk** ) ) |
| | ) |
| Defendants-Respondents, | ) |
| | ) |
| and | ) |
| | ) |
| DOES A through F, individually. | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Ronald J. Wilper, District Judge.

The judgment in favor of respondents is <u>reversed</u>, and this case is <u>remanded</u> for further proceedings. The attorney fee award in favor of respondents is <u>vacated</u>. Costs on appeal are awarded to appellants.

Mauk, Miller & Burgoyne, LLC, Boise, attorneys for appellants. William L. Mauk argued.

Hepworth, Janis & Kluksdal, Chtd, Boise, attorneys for respondents. John Janis argued.

_____

WALTERS, Justice *pro tem*

Walter Minnick and A.K. Lienhart Minnick, husband and wife (collectively Minnicks), brought a professional malpractice action against the law firm Hawley Troxell Ennis and Hawley, LLP (Hawley Troxell), alleging negligence in rendering services in connection with a real estate development project. On motion of Hawley Troxell for summary judgment, the district court dismissed the action as time-barred under the applicable statute of limitations. On

1

appeal, the Minnicks argue that the district court erred in calculating accrual of their action under the statute, Idaho Code section 5-219(4). We reverse the judgment, and remand the case for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In February 2006, the Minnicks engaged Hawley Troxell to assist on a real estate development project known as Showy Phlox Estates Subdivision (Showy Phlox).[1] The property to be developed into Showy Phlox consisted of approximately 73 acres located off North Cartwright Road with frontage on Dry Creek, roughly one mile east of Hidden Springs in Ada County, Idaho. While the Minnicks were the sole joint owners of the property, U.S. Bank held a mortgage on the same. The Minnicks planned to develop Showy Phlox into seven single-family housing lots of approximately ten acres each.

The property at issue contains certain critical wildlife and plant habitat, wetland, watershed, riparian, natural scenery and other conservation values. To conserve the nature of the landscape, the Minnicks sought to execute a conservation easement to the Land Trust of Treasure Valley, Inc. (LTTV), a not-for-profit organization pursuant to 501(c)(3) of the Internal Revenue Code. LTTV is committed to conserving space, habitat recreation, and scenic values close to residential communities. The easement, as contemplated, would restrict use and development on effectively 80% of the land. LTTV is an organization qualified to receive charitable contributions satisfying section 170(b)(3) of the Internal Revenue Code.

The conservation easement was a key component of the Showy Phlox development plan. As alleged by the Minnicks in the complaint, from "the inception of [their] engagement of Hawley Troxell's services on [Showy Phlox]," the firm was aware that the conservation easement was a "significant feature of the proposed development." In addition, the Minnicks desired and intended for the easement to qualify as a charitable contribution for tax purposes, a purpose Hawley Troxell allegedly knew and appreciated. Hawley Troxell denies knowing about

---

[1] It is worth noting that the Minnicks had previously engaged Hawley Troxell in the spring of 2004 regarding the same property. Specifically, the Minnicks had discussions with a neighbor interested in purchasing a large portion of the land, undeveloped, and the Minnicks engaged Hawley Troxell to draft and advise on a purchase and sale agreement. However, they ultimately decided in June 2004, rather than sell the bare land, they would develop it themselves into Showy Phlox. The legal malpractice claim at issue in this appeal revolves around the Showy Phlox development, not the failed purchase and sale to the neighboring landowner. It is also worth noting that until the events giving rise to this action, Walter Minnick had been a regular client of Hawley Troxell for many years, seeking counsel and representation on a wide spectrum of legal matters, both personal and professional.

2

this contemplated tax deduction, stating it reviewed the easement only to ensure it met local land use standards and not with an eye for tax planning.

In mid to late 2006, counsel for LTTV provided the Minnicks with a model conservation easement agreement, which was relayed to Hawley Troxell for review and revision. Hawley Troxell was involved in reviewing, amending, and revising numerous drafts of the easement. On September 6, 2006, Hawley Troxell provided the Minnicks with several documents, including a final conservation easement agreement. The Minnicks signed the conservation agreement, which was provided to LTTV's counsel who recorded it on September 7, 2007. By this transaction, the easement was conveyed to LTTV. Prior to recordation, however, U.S. Bank's outstanding mortgage on the property had not been subordinated to the easement, as expressly required by the plain language of the easement agreement as well as the applicable federal regulations.

In reliance on the grant of easement, the Minnicks claimed hundreds of thousands of dollars in charitable deductions and tax refunds on their jointly filed tax returns for the years 2006, 2007, and 2008. On June 20, 2008, the Internal Revenue Service (IRS) sent the Minnicks a letter stating that their 2006 tax return had been selected for examination. The letter explained that the examination would focus primarily on the claimed charitable deduction for the conservation easement. Certain initial efforts were undertaken by the Minnicks and their accountant to resolve the dispute, efforts which are not fully evidenced in the record. On June 1, 2009, and after these initial efforts proved ineffective, the Minnicks retained Tim Tarter, a tax attorney, to help respond to questions being raised by the IRS relating to the easement's treatment as a charitable donation on their federal tax returns.

Roughly one month thereafter, on July 8, 2009, the IRS issued two notice-of-disallowance letters notifying the Minnicks that their 2006, 2007, and 2008 charitable deductions were disallowed. These are commonly referred to as "30-day letters" because they require the taxpayer to respond within 30 days. One letter was for fiscal year 2006, and the other for the carry-over deductions for years 2007 and 2008. Included with these letters were examiner reports explaining the IRS examiner's reasons for disallowing the deductions.

On September 17, 2009, the IRS provided the Minnicks with a notice of deficiency seeking unpaid taxes and penalties for 2007 and 2008 totaling, as of that date, $256,455.60, plus accruing interest. In response, the Minnicks filed a petition in the United States Tax Court (tax court) on December 14, 2009, challenging the IRS's disallowance of the deductions and

3

contesting the deficiencies, penalties, and interest assessed. The IRS answered the petition on February 2, 2010. On June 14, 2011, while the tax court action was pending, the IRS requested from the Minnicks answers to a list of questions as well as documents demonstrating why the easement qualified as a charitable contribution. It was in response to this inquiry, the Minnicks contend, that they discovered for the first time that Hawley Troxell failed to take the actions necessary to subordinate U.S. Bank's mortgage on the property to the easement. On September 12, 2011, with Hawley Troxell's input and assistance, U.S. Bank agreed to subordinate, after the fact. Despite this subordination, the IRS filed a motion seeking to amend its answer to include subordination as a new ground for disallowing the deduction, specifically taking issue with the fact that the mortgage was not subordinated prior to the grant of easement. The Minnicks opposed the motion, but on January 5, 2012, the tax court granted the IRS leave to amend.

On April 3, 2012, a decision was issued in another tax court case, *Mitchell v. Commissioner*, 138 T.C. 324 (T.C. 2012). In addressing a question of first impression, the court in *Mitchell* established that a mortgage must be subordinated prior to the grant of a conservation easement, specifically finding that this error cannot be cured *ex post facto* by recording the subordination after the charitable gift is made. *Id*. at 332 ("Though the subordination regulation is silent as to when a taxpayer must subordinate a preexisting mortgage on donated property, we find that the regulation requires that a subordination agreement be in place at the time of the gift."). Because of the *Mitchell* decision, and believing the issue may be dispositive of the entire case, the tax court issued a new scheduling order on July 18, 2012 limiting argument to only whether the Minnicks satisfied the subordination requirement. On December 17, 2012, the tax court issued its decision stating that "[b]ecause U.S. Bank's mortgage was not subordinated to the conservation easement when it was granted, no deduction is permitted for the grant of the conservation easement." Given this ruling, the tax court found that it "need not reach the IRS's alternative arguments for denying the deduction."[2]

On June 7, 2012, the Minnicks filed the instant action underlying this appeal, a single claim for professional negligence against Hawley Troxell. According to the Minnicks, "[a]nticipating they might lose the [t]ax [c]ourt case because of the *Mitchell* decision," they filed the malpractice action. However, they withheld service of the complaint until December 5, 2012,

---

[2] At oral argument on the instant case, counsel advised that the decision of the tax court was currently on appeal before the U.S. Ninth Circuit Court of Appeals.

"hoping that they might convince the [t]ax [c]ourt that their situation was distinguishable from *Mitchell*." Hawley Troxell answered the complaint on January 14, 2013, raising eight affirmative defenses including the statute of limitations.

On August 16, 2013, the Minnicks filed a motion for partial summary judgment seeking dismissal of certain of Hawley Troxell's affirmative defenses, including that based upon the statute of limitations. Hawley Troxell filed a cross-motion for summary judgment based on the two-year limit established in Idaho Code section 5-219(4). A hearing on the motions was held on October 2, 2013, and on October 28, 2013, the district court issued a memorandum decision and order dismissing the suit as time-barred under the statute of limitations.

On November 12, 2013, Hawley Troxell moved for an award of attorney fees and costs. The Minnicks timely objected to the request on November 25, 2013, to which Hawley Troxell replied on December 6, 2013. Following a December 30, 2013 hearing, the district court issued a memorandum decision awarding Hawley Troxell all of its costs and most of its fees, specifically $66.00 in costs and $50,000 in fees.

On December 5, 2013, the Minnicks filed a notice of appeal regarding the summary judgment that their action was time-barred, and on January 22, 2014, filed an amended notice of appeal incorporating the fee award.

## II. ISSUES ON APPEAL

1. Whether the district court erred in granting summary judgment and dismissing the underlying action as time-barred under the statute of limitations.

2. Whether the district court erred in awarding attorney fees and costs.

3. Whether either party is entitled to attorney fees and costs on appeal.

## III. STANDARD OF REVIEW

An appeal from summary judgment is reviewed under the same standard a district court uses when granting a motion for summary judgment. *A & J Const. Co., Inc. v. Wood*, 141 Idaho 682, 684, 116 P.3d 12, 14 (2005). Under Rule 56(c) of the Idaho Rules of Civil Procedure, summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." If the evidence reveals no disputed issues of material fact, then summary judgment should be granted. *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 718–19, 918 P.2d 583, 587–88 (1996). In making this determination, "all disputed facts are liberally construed in favor of the non-moving party." *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991).

5

*Silicon Int'l Ore, LLC v. Monsanto Co.*, 155 Idaho 538, 544, 314 P.3d 593, 599 (2013).

## IV. ANALYSIS

**A. The district court erred in finding on summary judgment that the Minnicks' claim was time-barred under the applicable statute of limitations.**

"An action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued." *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002) (citing I.C. § 5-219). The cause of action accrues "as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer." I.C. § 5-219(4). This Court has held that a cause of action for professional negligence cannot accrue, however, until "some damage" has occurred. *Stephens v. Stearns*, 106 Idaho 249, 254, 678 P.2d 41, 46 (1984). The reason for the "some damage" rule is that "in order to recover under a theory of negligence, the plaintiff must prove actual damage." *Id.* The statute's accrual standard operates under a completed tort theory in that the cause of action accrues when the tort is completed, an event that corresponds with the first objectively ascertainable occurrence of some damage. *See, e.g., Streib v. Veigel*, 109 Idaho 174, 178–80, 706 P.2d 63, 67–69 (1985). What constitutes some damage turns on the facts and circumstances of each case. *Bonz v. Sudweeks*, 119 Idaho 539, 543, 808 P.2d 876, 880 (1991).

A situation analogous to the instant case occurred in *Griggs v. Nash*, 116 Idaho 228, 775 P.2d 120 (1989). In that case, Equity Mortgage Services, Inc. (EMSI), a loan broker, arranged for Gordon and Doris Griggs to loan $35,000 to Charles and Tina Nash, with the loan to be secured by a first deed of trust on their home. *Id.* at 229, 775 P.2d at 121. Before the loan closed, EMSI's owner/manager represented to the Griggses that the home had a value of at least $65,000. *Id.* EMSI contracted with Kim Trout, an attorney, to pay off existing liens on the property, record the deed of trust, and disburse the net funds to the Nashes. *Id.* at 230, 775 P.2d at 122. The Nashes did not make payments on the loan, and liens were discovered that had priority over the Griggs' deed of trust. *Id.*

On July 30, 1985, the Griggses filed an action alleging that EMSI and its owner/manager, among other things, had failed to "obtain an independent appraisal or other evidence of the value of the property" and to "examine the title to the property to determine whether the deed of trust given to the Griggses would be a valid first lien." *Id.* On September 23, 1987, EMSI and its

6

owner/manager filed a third-party claim against Trout contending that he had failed to clear all prior liens on the property and to advise them he knew the property's appraised value was $31,800. *Id.*

On appeal, we held that the cause of action as to each claimed failure by Trout accrued at a different time. With respect to the failure to pay the liens against the property, on October 11, 1984, an attorney representing the Griggses wrote a letter to EMSI demanding that it pay the principal amount of the loan, plus interest, for the failure to insure proper disbursement of the funds. In response, on November 2, 1984, EMSI's owner/manager wrote back stating that EMSI had already incurred $1,500.00 in attorney fees for work done to take action against Trout. We held that incurring those fees only commenced the running of the statute of limitations with respect to the failure to pay off the liens because the proposed action against Trout mentioned in the letter "would have been based only on Trout's failure to clear the tax lien of the State of Idaho from the title to the property, and not on the alleged failure of Trout to inform EMSI of the $31,800 appraisal on the property." *Id.* at 232, 775 P.2d at 124. At that point, the only wrongdoing alleged by the Griggses was the failure to pay those liens. With respect to the claim against Trout for failing to reveal the appraised value of the property, we held that it did not accrue until EMSI and its owner/manager incurred attorney fees in defending the Griggs' lawsuit, which the record reflected was at least by September 9, 1987. Thus, the statute of limitations commenced to run as to each of the theories for liability when they were raised by the Griggses.

Here, the Minnicks' claim against Hawley Troxell based on the firm's failure to subordinate the deed of trust could not have begun accruing until the IRS raised subordination in the underlying tax court proceedings. While the IRS formally notified the Minnicks in July 2009 that the charitable deduction would be disallowed, it was not until June 2011 that the IRS first requested information specifically concerning subordination and it was not until October 2011 that the IRS moved to amend its answer in the tax court case alleging failure to timely subordinate as an additional ground for disallowing the deduction. The instant action was filed in June 2012, less than two years after subordination was raised in June 2011.

Although the Minnicks retained a tax attorney in June 2009 to address the problems with the charitable easement initially identified by the IRS, these preliminary reasons did not

7

specifically include the Minnicks' failure to subordinate the deed of trust on the property.[3] "Some damage" related to subordination could not have been incurred until the issue was formally raised. Had the IRS never raised the issue, and had the Minnicks prevailed on the other issues raised, Hawley Troxell's failure to obtain subordination could not have harmed the Minnicks and they would not have an actionable claim for legal malpractice against the firm for its alleged failure to comply with the subordination requirement. *City of McCall v. Buxton*, 146 Idaho 656, 662–63, 201 P.3d 629, 635–36 (2009) ("Even when an attorney is negligent, that breach of duty may not be a proximate cause of the resulting damage to the client.").

For these reasons, the district court erred in finding on summary judgment that the Minnicks' legal malpractice action against Hawley Troxell was time-barred under Idaho Code section 5-219. The district court's judgment is reversed and the matter is remanded to the district court for further proceedings. Given this holding, the district court's fee award to Hawley Troxell as the prevailing party is also vacated.

**B.     Neither party is entitled to attorney fees on appeal.**

Both parties seek attorney fees on appeal pursuant to Idaho Code section 12-120(3). When the Court vacates a judgment and remands a case for further proceedings, "any determination of the prevailing party is premature until the case is finally resolved." *Buxton*, 146 Idaho at 667, 201 P.3d at 640. Neither party is entitled to attorney fees on appeal at this time.

**C.     The Minnicks are entitled to recover costs on appeal.**

Along with its request for attorney fees on appeal, the Minnicks also seek costs on appeal. Given that the district court's judgment in favor of Hawley Troxell is reversed and the action is remanded for further proceedings, costs on appeal are awarded in favor of the Minnicks. "[C]osts can be awarded to the prevailing party on the appeal, even though that party may not ultimately be the prevailing party in the action." *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 148 Idaho 479, 501, 224 P.3d 1068, 1090 (2009) (citations omitted).

---

[3] The Minnicks received two 30-day letters from the IRS, dated July 8, 2009, which were accompanied by examiner reports. These items informed the Minnicks that the deduction would be disallowed and certain specific reasons why. Generally, the deduction was rejected because the Minnicks failed "to demonstrate that the easement met the statutory requirements for a conservation contribution" under the applicable federal regulations. More specifically, the IRS provided the following reasons for rejecting the charitable deduction: (1) it was a *quid pro quo* transaction, (2) it was not "exclusively for conservation purposes," (3) it lacked a written acknowledgement from LTTV that no goods or services were provided in consideration of the gift, and (4) the IRS contested the appraisal and related value of the donation. The IRS further outlined that a contribution will be deemed "exclusively for conservation purposes" only if it is protected in perpetuity.

## V. CONCLUSION

The judgment in favor of Hawley Troxell is reversed and the case is remanded for further proceedings. The fee award in favor of Hawley Troxell is also vacated. Costs on appeal are awarded in favor of the Minnicks.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.