896 P.2d 338

BLISS VALLEY FOODS, INC., an Idaho corporation, and Robert and Bernadine Erkins, Plaintiffs–Appellants,

v.

Thomas G. WALKER, Jr., Defendant–Respondent.

No. 20754.

Supreme Court of Idaho, Boise, January 1995 Term.

June 2, 1995.

Skinner, Fawcett & Mauk, Boise, for appellants. William L. Mauk, argued.

Cosho, Humphrey, Greener & Welsh, P.A., Boise, for respondent. Rory Jones, argued.

JOHNSON, Justice.

This is a legal malpractice case in which the primary issue is the application of the statute of limitations. The narrow issue we must address is the interpretation of the concealment exception to the two-year statute of limitations for professional malpractice contained in I.C. § 5–219(4). We conclude that the one-year limitation contained in the concealment exception begins to run when "the injured party knows or in the exercise of reasonable care should have been put on inquiry" of the alleged malpractice, not when the injured party knows or was put on inquiry of "the fact of damage." I.C. § 5–219(4) (1990).

# I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

The general background of this case is described in the opinion of this Court in a prior case (Bliss I), *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.,* 121 Idaho 266, 824 P.2d 841 (1991).

In the spring of 1984, Robert Erkins (Erkins), an Idaho businessman, and Thomas Walker (Walker), an attorney, formed a limited partnership to grow mushrooms on a ranch owned by Erkins and his spouse (the Erkins). Walker prepared the formation and financing documents for a limited partnership (the partnership), and solicited some of his clients to invest in the partnership as limited partners (the limited partners).

In the summer of 1984, Walker, a general partner in the partnership along with the Erkins, negotiated and drafted the terms of a loan agreement (the loan agreement), which provided for a loan from the Idaho First National Bank (the bank) to the partnership. Near the end of the negotiations, the bank requested several changes in the working capital and current ratio requirements contained in § 3.10 of the loan agreement. According to his testimony at trial in Bliss I, Walker found the changes "substantial" and "difficult, if not impossible" to meet, and believed the changes in § 3.10 would put the partnership in technical default within a short time.

Walker testified at trial in Bliss I that he reached an oral agreement with the bank's loan officer (the loan officer) that the borrowers would sign the loan agreement with the modified § 3.10, but that the bank would waive the "burdensome" terms of § 3.10 on request. Walker admits he did not discuss with the Erkins the changes in § 3.10, his concerns about the changes, or his agreement with the loan officer about waiving the requirements of § 3.10. On August 24, 1984, the Erkins signed the loan agreement and personal guarantees based on what they claim were Walker's representations that the loan agreement contained no material changes from the previous draft.

In December 1984, without informing the Erkins, Walker requested a waiver of the requirements of § 3.10. The bank denied the waiver. On October 15, 1985, the bank declared the loan in default, citing § 3.10. The partnership continued to make payments on the loan pursuant to extension agreements with the bank until January 1987, when the bank initiated foreclosure proceedings.

The Erkins claim they did not learn about Walker's role in the modification of § 3.10, his concerns, and his agreement with the loan officer concerning waivers until Walker's testimony at the Bliss I trial in April 1989.

The partnership encountered financial problems soon after its formation. In June 1985, the limited partners met to discuss their concerns. During the meeting, one of the limited partners summoned Walker, who was waiting nearby. Walker later testified that after his arrival, one of the limited partners stated: "We want to get rid of Bob Erkins." Walker suggested incorporating the partnership so that the limited partners would become the majority shareholders, capable of neutralizing the Erkins' influence over the business. Walker admits he did not inform the Erkins about the limited partners' meeting.

Walker drew up the incorporation papers the next day. According to the Erkins, Walker persuaded them to go along with the incorporation plan by telling them that the bank was requesting the incorporation, as had been anticipated at the time the partnership was formed. Immediately after the incorporation of Bliss Valley Foods, Inc. (the corporation), the new board of directors composed of the former limited partners terminated Erkins's employment contract with the corporation and a residential lease by which Erkins was paid to provide employee housing. The corporation also stopped making payments to Erkins for lease of the site and for geothermal water, effective December 1985.

The Erkins claim they did not learn about Walker's full role regarding the incorporation and the removal of Erkins until Walker con-

fessed to the corporation's attorney in December 1987.

During the progress of Bliss I, Erkins and Walker signed a "standstill agreement" (the standstill agreement) releasing all claims against each other, except those for professional malpractice. They agreed not to assert in any future lawsuit between them a defense based on any statute of limitations which expired after the date of the standstill agreement, August 29, 1988.

In May 1990, the corporation and the Erkins filed this malpractice action against Walker. Walker sought summary judgment on four grounds: (1) there was no attorney-client relationship between the Erkins and Walker; (2) the malpractice claims are barred by the statute of limitations in I.C. § 5–219(4); (3) the claims for fraud are barred by the standstill agreement; and (4) the claims should be dismissed because they did not state a claim for damages on behalf of the corporation. The trial court granted Walker's motion for summary judgment on the basis of the statute of limitations only, ruling that the statute of limitations for professional malpractice contained in I.C. § 5–219(4) expired before the standstill agreement was signed, thereby barring the claims. The trial court did not address any of the other grounds for summary judgment raised by Walker. The corporation and the Erkins appealed.

## II.

### THE TRIAL COURT SHOULD NOT HAVE GRANTED SUMMARY JUDGMENT.

The corporation and the Erkins assert that the trial court should not have granted summary judgment dismissing their claims. We agree.

■ We first address Walker's contention that there was no attorney-client relationship between himself and the Erkins. Erkins's affidavit states that he and his wife agreed to have Walker represent them, as their attorney, "in all legal matters pertaining to the formation, development and financing of the business." Despite Walker's sworn statements to the contrary, Erkins's affidavit creates a genuine issue of material fact concerning the existence of an attorney-client relationship.

The statute of limitations for professional malpractice actions is two years from accrual of "the occurrence, act or omission complained of." I.C. § 5–219(4) (1990). The statute contains an exception (the concealment exception) to the usual two-year limitation:

> [P]rovided, however, when the action is for damages arising out of the placement and inadvertent, accidental or unintentional leaving of any foreign object in the body of any person by reason of the professional malpractice of any hospital, physician or other person or institution practicing any of the healing arts or when the *fact of damage* has, for the purpose of escaping responsibility therefor, been *fraudulently and knowingly concealed* from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party *knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of....*

I.C. § 5–219(4) (1990) (emphasis added).

The statute of limitations for claims within the concealment exception is one year from the date of accrual, or two years following the occurrence, act or omission complained of, whichever is later. Unless the one-year extension provided for in the concealment exception applies in this case, the Erkins' claims are barred by I.C. § 5–219(4). This focuses us narrowly on the question we must answer: Does the one-year statute of limitations contained in the concealment exception begin to run when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding: (1) the "fact of damage," or (2) the malpractice that caused the damage?

In *Reis v. Cox*, 104 Idaho 434, 660 P.2d 46 (1982), the Court considered when an action for medical malpractice accrued under the exception where a surgeon had left a surgical

drain inside a patient. The patient experienced complications immediately after the surgery, but the surgeon, who had noted in his post-operative notes that he might have left a sponge in the patient, dismissed the patient's complaints. It was several years and several doctors later before someone suggested that the patient's problems were attributable to a foreign object being left in the patient's body.

At issue in *Reis* was when the patient knew or should have been put on inquiry "regarding the condition or matter complained of." "[T]he first question to be answered," the Court noted, "is what is the 'condition or matter complained of?' " *Id.* at 438, 660 P.2d at 50. The Court rejected the argument that the patient's recurring pain and abscesses along the incision activated the statute by putting the patient on inquiry regarding the condition, because the surgeon told the patient there was nothing wrong with the surgery. The Court concluded:

> We construe the statutory language, "condition or matter complained of," to mean the condition which ultimately is alleged to constitute the malpractice or negligence of the doctor, *i.e.,* in this instance the leaving of a foreign object in her body.

*Id.*

In *McCoy v. Lyons,* 120 Idaho 765, 820 P.2d 360 (1991), a legal malpractice case, the Court discussed the concealment exception in a context similar to the present case:

> [W]hen professional malpractice involves fraudulent or intentional *concealment of the wrongdoing,* ... the statute of limitations contained in I.C. § 5–219(4) is tolled until the injured party "knows or in the exercise of reasonable care should have been put on inquiry regarding the ... matter complained of."

*Id.* at 772, 820 P.2d at 367 (emphasis added). Although the Court did not explicitly define the "matter complained of," its analysis focused on when the client learned of the lawyer's actions that constituted the malpractice.

The Court considered the concealment exception most recently in another legal malpractice case, *Tingley v. Harrison,* 125 Idaho 86, 867 P.2d 960 (1994). In *Tingley,* the Court focused on when the client learned that his personal injury action had been dismissed for failure to prosecute, which was concurrent with notification of the attorney's malpractice in not prosecuting the action. Therefore, there was no reason for the Court in *Tingley* to distinguish between the client's learning of the "the fact of damage" (the dismissal), and "the matter complained of" (the lawyer's malpractice in allowing the dismissal).

█ *Reis* and *McCoy* make it plain that "the matter complained of" refers to the alleged malpractice, not to "the fact of damage." *Tingley* is not in conflict with this conclusion. Therefore, in determining when the one-year limitation contained in the concealment exception began to run in this case, the appropriate focus is on when the Erkins knew or in the exercise of reasonable care should have been put on inquiry regarding Walker's alleged malpractice.

There is an interrelationship between the alleged malpractice in this case and the concealment of the malpractice. Although Walker contends that the alleged malpractice concerning the loan agreement was the inclusion of § 3.10, this is not the way the Erkins characterized the loan agreement malpractice. The Erkins alleged that they were "falsely advised by Walker that ... no material changes had been made" in the loan agreement since the earlier draft. It is this misrepresentation, together with Walker's failure to disclose his opinions regarding the advisability of accepting the provisions contained in § 3.10 and his agreement with the loan officer, that the Erkins characterize as malpractice.

In his motion for summary judgment Walker did not argue that the Erkins had failed to plead malpractice sufficiently, but contended only that the statute of limitations barred the action. For the purposes of summary judgment, therefore, we must accept the Erkins' characterization of the alleged malpractice. *See Jones v. Runft, Leroy, Coffin & Matthews,* 125 Idaho 607, 615, 873 P.2d 861, 869 (1994) (where moving party argued only that the statute of limitations barred claim, the Court would not address whether

the non-moving party sufficiently pleaded a fraud claim).

Accepting the Erkins' characterization of the alleged loan agreement malpractice, we then must address whether there is a genuine issue of material fact concerning when the Erkins knew or were put on inquiry that malpractice had occurred. According to *McCoy* "where discovery of a cause of action commences the statute of limitations the date of discovery is a fact question for the jury unless there is no evidence creating a question of fact." 120 Idaho at 773, 820 P.2d at 368; *see also Reis,* 104 Idaho at 438, 660 P.2d at 50.

Erkins's affidavit in opposition to Walker's motion for summary judgment states that it was not until April 1989, when Walker testified in Bliss I, that Walker revealed the true circumstances concerning his conversation with the loan officer that led to the inclusion of the revised § 3.10. This portion of the affidavit states that these were "facts which he [Walker] had concealed from us [the Erkins] until that date."

The fact that the Erkins received a default notice from the bank in October 1985 citing the partnership's failure to comply with the provisions of § 3.10 is not conclusive evidence that the Erkins then knew or were put on inquiry of the alleged loan agreement malpractice. The default notice is only evidence that might be considered by the trier of fact in deciding when the Erkins knew or should have been put on inquiry concerning the alleged malpractice. Based on Erkins's affidavit, there remains a genuine issue of material fact concerning when the Erkins knew or were put on inquiry concerning the alleged loan agreement malpractice.

With regard to the Erkins' incorporation malpractice claim, the Erkins characterize the alleged malpractice as Walker's failure to reveal the true reason behind the incorporation, and Walker's persuading the Erkins to go along with the incorporation, knowing that the purpose was to diminish Erkins's authority.

In Erkins's affidavit in opposition to Walker's motion for summary judgment, Erkins stated that it was not until December 1987 that Walker revealed the true circumstances and reasons for the incorporation. This portion of the affidavit states that these were "facts which he [Walker] had concealed from us [the Erkins] until that date." For purposes of summary judgment, this created a genuine issue of material fact concerning when the Erkins knew or were put on inquiry concerning the alleged incorporation malpractice.

The fact that the Erkins learned of the limited partners' dissatisfaction is only evidence that might be considered by the trier of fact in deciding when the Erkins knew or should have been put on inquiry concerning the true reason for the incorporation and Walker's role in it, which the Erkins alleged was malpractice.

### III.

### CONCLUSION.

We vacate the summary judgment and remand the case to the trial court for further proceedings.

We award the Erkins costs on appeal.

TROUT and SILAK, JJ., and LEGGETT and YOUNG, JJ. Pro Tem., concur.