# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 46885

| | |
|---|---|
| SHARON WALSH, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| SWAPP LAW, PLLC, a foreign business entity, dba CRAIG SWAPP & ASSOCIATES; and STEPHEN REDD, an individual attorney, | ) ) ) ) |
| | ) |
| Defendants-Respondents, | ) |
| | ) |
| and | ) |
| | ) |
| DOES I-X, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Boise, February 2020 Term

Opinion Filed: April 22, 2020

Karel A. Lehrman, Clerk

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Samuel Hoagland, District Judge.

The district court's decision is affirmed.

Beckett Law Firm, for Appellant. Kristian S. Beckett argued.

Powers Farley, PC, for Respondents. James S. Thomson, II, argued.

_____

BURDICK, Chief Justice.

This appeal arises from a legal malpractice action in which the district court awarded summary judgment in favor of Swapp Law, PLLC, d/b/a Craig Swapp & Associates, and Stephen Redd, an employee of the firm (collectively, "CS&A"). Sharon Walsh retained CS&A after she was involved in two car accidents in 2013. In the negligence action stemming from the first accident, Walsh followed Redd's advice and settled the case. Walsh then changed representation and, with her new counsel, settled the second case. On March 2, 2017, Walsh filed this action

1

alleging, among other things, that CS&A was negligent in advising her to settle the first case while the second case was still pending and by failing to advise her of an underlying subrogation responsibility in the first case. CS&A moved for summary judgment. It argued that Walsh's claim was time-barred under Idaho Code section 5-219(4)'s two-year statute of limitations because her malpractice claim began to accrue when she released the first claim. The district court agreed and granted the motion. Walsh timely appeals.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On February 8, 2013, Sharon Walsh was rear-ended by Jake Hanson (the "First Collision"). Her vehicle was damaged and Walsh sustained injuries for which she sought medical treatment, including regular chiropractic care for neck pain at Jon Gray Chiropractic. Three months later, on May 7, 2013, Walsh was involved in a second motor-vehicle collision with Donald LaMott (the "Second Collision"). She was injured again and experienced what she described as "new or different pain," starting in her neck. She later underwent surgical correction for a damaged disc in her cervical spine and sustained a permanent partial disability.

After the Second Collision, Walsh retained Craig Swapp & Associates to represent her on both collisions. CS&A assigned Walsh's case to a pre-litigation "pod" where Paul Swainstrom acted as the supervising attorney and Stephen Redd acted as the "settlement negotiator." On April 30, 2014, Redd sent a statement of claim to Hanson's insurer, American National Property and Casualty Insurance Company ("American National Insurance") offering to settle the First Collision claim for $16,500. In September 2014, CS&A reorganized personnel and Craig Swapp took over as the supervising attorney for Walsh's case. Around the same time, CS&A obtained an apportionment opinion from Dr. Jon Gray that Walsh's injuries could be apportioned 15% to the First Collision and 85% to the Second Collision. In January 2015, American National Insurance offered to settle the case for $8,000 plus an agreement to pay a $5,000 outstanding medical lien.

On February 2, 2015, Blue Cross Blue Shield of Idaho wrote CS&A to assert a subrogation interest of $60,572.08 against the proceeds from the First Collision and $3,980.31 for the Second Collision. It is unclear when CS&A received this letter, but Redd testified that he thought he received it after the First Collision case had settled. He also testified that, upon receiving the letter, he contacted Blue Cross to dispute their apportionment. CS&A never informed Walsh of this letter nor the asserted subrogation interest while the firm represented her. She only learned of its existence via discovery in the instant action. On the morning of February

2

4, 2015, Redd discussed American National Insurance's offer with Walsh and told her that it was likely the "best offer [she] was going to get for the [First Collision]." Based on Redd's recommendation, Walsh authorized the settlement and signed a release of claims on February 5, 2015. American National Insurance remitted payment a day later. On February 10, 2015, Blue Cross sent another letter to CS&A after receiving Redd's. It reads:

> Thank you for advising us that you are in the process of settling Sharon Walsh's claim arising out of [the First Collision]. She also has a claim for injuries as a result of [the Second Collision]. Blue Cross of Idaho has a subrogation claim for medical bills Ms. Walsh incurred from both accidents. The total subrogation interest is $61,304.21. Apparently there is confusion over which medical bills are attributable to which collision. Until the confusion is resolved, we ask that you keep $61,304.21 in trust pursuant to Utah Rule of Professional Conduct 1.15, or the Idaho Rules of Professional conduct 1.15, whichever is applicable.

On April 29, 2015, CS&A filed a lawsuit against LaMott on Walsh's behalf. In June 2015, because the case had not yet settled, CS&A assigned Walsh's case to a new litigation associate in the firm, Kristian Beckett. Beckett is also Walsh's attorney in this malpractice case and appeal. In his first meeting with Walsh, Beckett asked why she settled the First Collision case. After she explained that Redd advised her to settle, Beckett told her that "it was not a good idea to settle one of two claims where the claim is still pending in litigation where there is an overlapping injury." He also said that "there would be an 'empty chair' that would be difficult to deal with." Shortly after receiving Walsh's case, Beckett informed Swapp that he believed that the firm might have committed malpractice by advising Walsh to settle the First Collision case before the Second Collision case was resolved.

On February 22, 2016, Dr. Tyler Frizzell, a Boise neurosurgeon, produced an independent-medical-exam opinion for CS&A. In it, Dr. Frizzell attributed 15% of Walsh's medical care and total expenses to the First Collision and the remaining 85% to the Second Collision.

In late March 2016, LaMott's attorney deposed Walsh during discovery for the Second Collision litigation. Based on that deposition, Beckett believed that LaMott would argue that Walsh's damages were caused by something other than the Second Collision. After the deposition, Beckett informed Walsh that he believed that the firm had committed malpractice when it advised her to settle the First Collision claim. On April 1, 2016, Beckett sent an email to Swapp, detailing his belief that "malpractice was committed with regard to settling [the First Collision case]" and that CS&A "need[ed] to withdraw from representing [Walsh] on the second

claim." He explained that when he received Walsh's file, his "first inclination" was that malpractice had occurred and that he had expressed that concern at that time. The email further detailed Beckett's belief that "[t]he full measure of the malpractice was realized" on February 22, 2016, when Dr. Frizzell opined that Walsh sustained a permanent disability rating of 19%, of which he apportioned 16% to the Second Collision, and that 15% of the medical-care costs following the Second Collision should be apportioned to the First Collision. Beckett also wrote that he had "change[d] [his] original opinion" that the firm should continue to represent Walsh on the Second Collision case. He explained that he now believed that CS&A should disclose the malpractice, surrender her file, and advise her to seek legal representation.

Shortly after this email, in April 2016, Beckett terminated his employment with CS&A. Though CS&A assigned another litigator to her case, Walsh decided to continue with Beckett as her attorney independent of CS&A.

On March 2, 2017, Walsh, with Beckett acting as her attorney, filed a complaint against CS&A alleging legal malpractice. In a later amended complaint, Walsh alleged that the CS&A and Redd were negligent in advising her to settle the first case, failing to appropriately investigate her injuries to determine which were attributable to which collision, and by failing to inform her that Blue Cross had asserted a subrogation interest in her case. On July 31, 2017, CS&A filed an answer in which they asserted, among other defenses, that Walsh's claim was barred by Idaho Code section 5-219(4)'s two-year statute of limitations.

Around August 28, 2017, LaMott agreed to settle the Second Collision litigation for the policy limits. This included the full amount of LaMott's liability policy limit ($100,000) and the full amount of the underinsured-motorist policy limit under Walsh's own policy ($100,000). LaMott and Walsh signed a settlement release on September 21, 2017. On October 12, 2017, the Second Collision case was dismissed with prejudice based upon the parties' stipulation. Meanwhile, CS&A moved to disqualify Beckett on grounds that he would become a material witness if Walsh's case were to go to trial. In December 2017, the district court denied the motion to disqualify Beckett, ruling that he could continue as counsel for purposes of pre-trial litigation, but expressly told the parties it would consider a renewed motion 90 days before trial.[1]

---

[1] Because it was not raised as an issue on appeal, we express no opinion as to the correctness of this decision.

After additional discovery, CS&A filed a motion for summary judgment arguing Walsh's claim was time-barred under Idaho Code section 5-219(4)'s two-year statute of limitations. CS&A pinpointed February 5, 2015—the date Walsh released the First Collision claim—as the moment Walsh's malpractice claim began to accrue.

On September 6, 2018, Walsh lodged two filings. First, Walsh filed a motion for leave to file a second amended complaint to add James Craig Swapp as an additional defendant, "clarify the issues," and seek punitive damages. Second, Walsh filed her response to CS&A's motion for summary judgment. She offered two principal arguments against the motion along with a supporting affidavit and exhibits. Walsh argued that CS&A disregarded Idaho's recognition of the completed-tort theory, which required that "some damage" be ascertainable for the cause of action to accrue. Walsh further argued that her claim was subject to the one-year tolling period under Idaho Code section 5-219(4) because CS&A knew that they had committed malpractice and concealed it from her. To support this argument, Walsh zeroed-in on the Blue Cross subrogation letter and CS&A's failure to provide it when they surrendered her file.

In response, CS&A argued that Walsh's fraudulent concealment claim did not preclude summary judgment because she had notice of a potential malpractice claim when she met with Beckett in June 2015. CS&A further argued that Beckett's knowledge of the malpractice should be imputed to Walsh as his client. CS&A also opposed Walsh's second motion to amend the complaint by arguing, among other contentions, that Walsh's assertions based on fraudulent concealment were futile as a matter of law.

The district court granted CS&A's motion for summary judgment and denied Walsh's motion to amend the amended complaint. It determined that Walsh's malpractice claim accrued on February 5, 2015, when she signed a release agreement for the First Collision claim. Assuming the fraudulent-concealment exception applied, the district court determined that Walsh's claim was also untimely under that provision.

Walsh filed a motion for reconsideration, arguing that Idaho Code section 5-219(4) is unconstitutionally vague as applied to legal-malpractice claims, the district court erroneously applied the "some damage" standard, and disputed material facts should have precluded summary judgment. The district court denied the motion. In its written order, the district court emphasized that the "law does not require that the full extent of damages occur or be known in order to start the statute of limitations from running." Addressing the fraudulent-concealment

5

exception, the court stressed that the standard was "when [Walsh] knew *or in the exercise of reasonable care should have been put on inquiry* regarding the malpractice" (emphasis in original). Concluding that Beckett's knowledge could be imputed to her, the court determined that Walsh could not show that the facts of the case failed to put her on inquiry. In support, the court pointed to Beckett's comments to Walsh in June 2015, Beckett's concerns conveyed to Swapp in June 2015, and Beckett's statement that a doctor's report received on February 2016 made him "realize the 'full measure' of the malpractice." Lastly, the district court determined that Idaho Code section 5-219(4) was not unconstitutionally vague because it unambiguously provided for how the statute of limitations functioned for typical claims and for those that were fraudulently concealed.

## II.   ISSUES ON APPEAL

1. Did the district court err when it determined that Walsh's malpractice cause of action began to accrue on the date she signed the release of claims for the First Collision case?

2. Did the district court err when it determined that, assuming Idaho Code section 5-219(4)'s one-year tolling for fraudulent concealment applied, Walsh's cause of action was nevertheless time-barred because she was put on inquiry of the malpractice in June 2015?

3. Is Idaho Code section 5-219(4) unconstitutionally void for vagueness?

## III.   STANDARD OF REVIEW

In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. Summary judgment is proper when there is no genuine issue of material fact and the only remaining questions are questions of law. This Court liberally construes all disputed facts in favor of the nonmoving party and draws all reasonable inferences and conclusions supported by the record in favor of the party opposing the motion.

*Jackson v. Crow*, 164 Idaho 806, 810–11, 436 P.3d 627, 631–32 (2019) (internal citations and quotation marks omitted). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Brooks v. Wal-Mart Stores, Inc.*, 164 Idaho 22, 27, 423 P.3d 443, 448 (2018) (quoting *Lockheed Martin Corp. v. Idaho State Tax Comm'n*, 142 Idaho 790, 793, 134 P.3d 641, 644 (2006)).

When this Court reviews the district court's decision on a motion for reconsideration, this Court applies the same standard of review used by the district court to decide the motion for reconsideration. *Id.* On a proper motion for reconsideration, the district court "must consider any new admissible evidence or authority bearing on the correctness of an interlocutory

6

order . . . . But the motion need not be supported by any new evidence or authority." *Id.* "When the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Idaho First Bank v. Bridges*, 164 Idaho 178, 186–87, 426 P.3d 1278, 1286–87 (2018) (quoting *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 480, 328 P.3d 456, 460 (2014)).

"The date for when a cause of action accrues may be a question of fact or law." *Reynolds v. Trout Jones Gledhill Fuhrman, P.A.*, 154 Idaho 21, 24, 293 P.3d 645, 648 (2013) (quoting *C & G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 142, 75 P.3d 194, 196 (2003)). "[I]f no disputed issues of material fact exist, when a cause of action accrues is a question of law for determination by this Court." *Id.* "Whether a statute is unconstitutionally vague is a pure question of law and therefore reviewed de novo." *State v. Cook*, 165 Idaho 305, 309, 444 P.3d 877, 881 (2019) (citation omitted).

## IV.    ANALYSIS

Walsh argues that the district court erred in awarding summary judgment. She first asserts that the district court misapplied this Court's approach to determining when her malpractice action accrued. Alternatively, she argues that when her cause of action accrued was a disputed issue of material fact that should have precluded summary judgment. Walsh next asserts that, even if her cause of action was barred under the normal operation of Idaho Code section 5-219(4), the fraudulent-concealment exception should apply. Alternatively, she argues that whether CS&A fraudulently concealed its malpractice from her is a disputed question of fact. Lastly, Walsh contends that Idaho Code section 5-219 is unconstitutionally vague. For the reasons below, we affirm the judgment of the district court.

### A. The district court did not err in granting summary judgment to CS&A because Walsh's malpractice action accrued when she released the First Collision claim.

The district court determined that Walsh's cause of action accrued on February 5, 2015, the date she signed the release on the First Collision case. The district court selected this date by reasoning that it was the point in time when the rights of the parties became fixed and Walsh could no longer recover an additional sum from Jake Hanson. Walsh argues that the earliest date her malpractice cause of action could have accrued was September 21, 2017—the date the Second Collision case settled. Up to that point in time, Walsh maintains that any damages related to her malpractice claim would have been entirely speculative because the Second Collision case

7

could have resolved in a manner that would have left her undamaged. Thus, she continues, her release of claims did not constitute "some damage" because there were no "objectively ascertainable" damages. Alternatively, she argues that disputes of material fact preclude summary judgment. Given Walsh's theory of her malpractice claim, and the unique circumstances of this case, we determine that her claim is barred by the statute of limitations because she would have experienced "some damage" from CS&A's alleged malpractice on the date she released her claim in the First Collision case.

"An action to recover damages for 'professional malpractice' must be commenced within two years after the cause of action has accrued." *Minnick v. Hawley Troxell Ennis & Hawley, LLP*, 157 Idaho 863, 866, 341 P.3d 580, 583 (2015) (citing *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002)); I.C. § 5-219. The plain language of Idaho Code section 5-219 provides that a legal malpractice claim begins to accrue at the time the negligent act or omission occurs.[2] I.C. § 5-219(4) ("[T]he cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged

---

[2] The relevant provision of Idaho Code section 5-219 provides as follows:

> Within two (2) years: . . .
>
> 4. An action to recover damages for professional malpractice, or for an injury to the person, or for the death of one caused by the wrongful act or neglect of another, including any such action arising from breach of an implied warranty or implied covenant; provided, however, . . . when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party, the same shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of; but in all other actions, whether arising from professional malpractice or otherwise, the cause of action shall be deemed to have accrued as of the time of the occurrence, act or omission complained of, and the limitation period shall not be extended by reason of any continuing consequences or damages resulting therefrom or any continuing professional or commercial relationship between the injured party and the alleged wrongdoer, and, provided further, that an action within the foregoing foreign object or fraudulent concealment exceptions must be commenced within one (1) year following the date of accrual as aforesaid or two (2) years following the occurrence, act or omission complained of, whichever is later. The term "professional malpractice" as used herein refers to wrongful acts or omissions in the performance of professional services by any person, firm, association, entity or corporation licensed to perform such services under the law of the state of Idaho.

I.C. § 5-219.

wrongdoer . . . .”). However, under this Court's interpretation of section 5-219(4), a malpractice cause of action cannot begin to accrue until "some damage" has occurred. *City of McCall v. Buxton*, 146 Idaho 656, 659, 201 P.3d 629, 632 (2009) (citing *Stephens v. Stearns*, 106 Idaho 249, 254, 678 P.2d 41, 46 (1984)). The "some damage" requirement reflects the simple understanding that a plaintiff must prove damages in order to succeed on a claim of negligence. *Id.* ("[S]ome damage is required because it would be nonsensical to hold that a cause of action is barred by the statute of limitations before that cause of action even accrues."). In other words, "[Idaho Code section 5-219(4)'s] accrual standard operates under a completed tort theory in that the cause of action accrues when the tort is completed, an event that corresponds with the first objectively ascertainable occurrence of some damage." *Minnick*, 157 Idaho at 867, 341 P.3d at 584. The "objectively ascertainable damage" standard is "an additional analytical tool" to determine when "some damage" occurs. *Chicoine v. Bignall*, 122 Idaho 482, 487, 835 P.2d 1293, 1298 (1992).

Our prior case law helps define the outer perimeter of what constitutes "some damage." Of course, it "must be damage that the client could recover from the professional in an action for malpractice." *Buxton*, 146 Idaho at 659, 201 P.3d at 632. However, "[p]otential harm or an increase in the risk of damage is not sufficient to constitute some damage." *Id.* Put succinctly, "[n]egligence that increases the risk that a client will be harmed does not trigger the running of the statute of limitations until harm actually occurs." *Id.* at 661, 201 P.3d at 634 (citing *Parsons Packing, Inc. v. Masingill*, 140 Idaho 480, 95 P.3d 631 (2004)). This Court has cautioned that "[t]he determination of what constitutes both damage and objective proof must be decided 'on the circumstances of each case.'" *Reynolds v. Trout Jones Gledhill Fuhrman, P.A.*, 154 Idaho 21, 25, 293 P.3d 645, 649 (2013) (citing *Buxton*, 146 Idaho at 662, 201 P.3d at 635). The central question is whether the alleged malpractice actually caused damage to occur or whether it merely increased or created the potential for damages. *Id.*

When an attorney's action or advice merely creates the potential for damage, this Court has held that the cause of action does not accrue until the damage is actually suffered. For example, in *City of McCall v. Buxton*, the client, the City of McCall, terminated its contract with a vendor and withheld payment from a different vendor on the advice of counsel. *Buxton*, 146 Idaho at 658, 201 P.3d at 631. When both vendors sued the City, this Court determined that, until there was an adverse judgment against the City, there was no damage, noting that an attorney's advice "often carries with it the risk of litigation[.]" *Id.* at 662, 201 P.3d at 635.

9

Similarly, in *Parsons Packing, Inc. v. Masingill*, an attorney failed to properly secure a client's interest in property that was the subject of an installment-lease purchase agreement. 140 Idaho 480, 481–82, 95 P.3d 631, 632–33 (2004). The client sued for malpractice after the buyer defaulted and entered bankruptcy. *Id*. at 481, 95 P.3d at 632. The district court ruled that the cause of action accrued when the property was transferred without the adequate security, but this Court reversed, holding that the faulty transfer only created the potential for damage, but that the client was not actually damaged until the buyer declared bankruptcy and the client lost its opportunity to fully recover. *Id.* at 483, 95 P.3d at 634. This Court took the same approach in *Bonz v. Sudweeks*, where an attorney filed a release of lis pendens in the wrong county's recorder's office. 119 Idaho 539, 540, 808 P.2d 876, 877 (1991). This Court held that the cause of action accrued when an investor refused to invest in the property because of the cloud of title— not when the misfiling occurred. *Id.* at 543, 808 P.2d at 880.

Conversely, where the allegedly negligent act *immediately* results in actual damages, the cause of action accrues simultaneously with the events comprising the malpractice. For example, *City of McCall v. Buxton* also addressed the City's claim that it was negligently advised to release a claim against an adverse party and reject a settlement offer from another one. 146 Idaho at 663, 201 P.3d at 636. Unlike the claims involving the contract termination and withheld funds, this Court held that the claims for negligent advice to release a claim and negligent rejection of a settlement offer accrued the instant the City released the claim and rejected the settlement offer. *Id.* The Court reasoned that the City lost its opportunity to recover and receive that specific settlement the moment it released the claim and rejected the settlement. *Id.*

Similar reasoning is found in *Lapham v. Stewart*, 137 Idaho 582, 51 P.3d 396 (2002). There, an attorney's secretary disbursed the entire sum of funds held in trust for the client to a third party (instead of distributing it incrementally and securing the client's approval for each increment as agreed upon). 137 Idaho at 584, 51 P.3d at 398. This Court held that the client "suffered some damage when his funds were allegedly wrongfully disbursed," because that was the moment the funds were no longer held in trust as agreed upon and the client could have recovered against the attorney. *Id.* at 588, 51 P.3d at 402. Though the client argued that the borrower might still have made all the payments, this Court held that the possibility of repayment did not delay the statute of limitations: "The mere hope that the loss may be recovered from another party in the future does not toll the statute of limitation for malpractice." *Id.* at 586, 51

10

P.3d at 400 (quoting *Figueroa v. Merrick*, 128 Idaho 840, 844, 919 P.2d 1041, 1045 (Ct. App. 1996)).

The unique facts and circumstances of this case demonstrate that Walsh experienced actual damage the moment she released her First Collision claim. Walsh alleged malpractice based on the following events:

- CS&A's failure to advise her that settling the First Collision case might adversely impact the Second Collision case;

- CS&A's failure to adequately investigate her injuries prior to settling the First Collision case;

- CS&A's failure to inform her of Blue Cross's asserted subrogation interest when she was advised to settle the First Collision case; and

- CS&A's withholding of the Blue Cross letter when CS&A released her file.

While these events comprise her malpractice claim, the focus remains on Walsh's sought-after damages to determine when her cause of action accrued. At oral argument, Walsh's counsel clarified that her theory of damages is based on settling the First Collision case for too little. Walsh settled the Second Collision case for policy limits. Walsh did not claim that she settled that case for a lesser amount as a result of the first settlement. Nor did Walsh argue that she incurred additional expense in the second case as a result of settling the first case. Finally, Walsh alleged no impairment of the second claim as the result of settling the first claim. As a result, the only damages Walsh could complain of were those stemming from the First Collision *i.e.* CS&A's alleged negligence caused her to settle for less than the subrogation interest or the overlapping injuries should have suggested to her attorneys. Accepting this premise, her cause of action would have accrued the moment the First Collision claim was released, not when the Second Collision case settled. Once she signed the release, Walsh could no longer recover the full amount she believed she was entitled to receive from Jake Hanson for the First Collision case. And so, for purposes of her malpractice claim, Walsh's claim accrued on February 5, 2015, because that's when she experienced "some damage" as that's the moment she "lost [her] opportunity to recover" from Jake Hanson.

Although Walsh argues that the overlapping injuries between the two accidents should yield a different result, we disagree. Walsh concedes that hindsight may reveal her damages were incurred the moment she signed the release, she nevertheless claims that the damages stemming from the alleged malpractice could not have been "objectively ascertainable" because LaMott

11

could have fully compensated her for those damages. However, the possibility of fully recovering from LaMott does not change the conclusive action of releasing the first claim against Hanson. As explained, any damages claimed for the difference between the injuries sustained from the First Collision and settlement would have amounted to actual damages on the day of the release because the release revoked Walsh's ability to recover those damages. That she might have been fully compensated in the future does not change that the sought-after damages were incurred the instant she signed the release. Thus, the possibility of compensation from LaMott did not stay the running of the statute of limitations. *See Lapham*, 137 Idaho at 586, 51 P.3d at 400.

Having determined that Walsh's claim accrued on February 5, 2015, we must next address Walsh's alternative argument that genuine issues of material fact should have precluded summary judgment. Walsh puts forward factual disputes relevant only under her view of the accrual standard. She does not dispute that she released all claims for the First Collision on February 5, 2015. As this is the lynchpin of the analysis in this case, no factual dispute precluded the district court from awarding summary judgment. Thus, we find no error.

## B. The district court did not err when it determined that, even if the fraudulent-concealment exception applied, Walsh's claim was still time-barred.

The district court determined that, even if the fraudulent-concealment exception under Idaho Code section 5-219 applied, Walsh's claim was nevertheless untimely. The court determined that Walsh could not show that the facts of the case failed to put her on inquiry notice, which was all that was required under the statute. In support of this conclusion, the district court imputed Beckett's knowledge to Walsh and highlighted Beckett's comments to her in June 2015, Beckett's concerns conveyed to Swapp in June 2015, and Beckett's statement that a doctor's report received in February 2016 made Beckett "realize the 'full measure' of the malpractice." Walsh argues that the district court erred by imputing Beckett's knowledge while at the firm to her because the firm was actively concealing information from her. She further argues that CS&A fraudulently concealed their malpractice from her by failing to include the Blue Cross letter when they released her file. Alternatively, Walsh argues that this issue should have been presented to the jury.

Idaho Code section 5-219 contains a specific one-year statute of limitations for circumstances where the offending party fraudulently conceals his malpractice. It begins to run "when 'the injured party knows or in the exercise of reasonable care should have been put on

12

inquiry' of the alleged malpractice . . . ." *Bliss Valley Foods, Inc. v. Walker*, 127 Idaho 12, 12, 896 P.2d 338, 338 (1995) (citing I.C. § 5-219). In assessing when the client should have been put on inquiry notice, this Court has made clear that "the matter complained of refers to the alleged malpractice, not to the fact of damage." *Id. at* 15, 896 P.2d at 341 (internal quotation marks omitted). Thus, while the "discovery rule" has been eliminated from general claims of malpractice under section 5-219, it continues to exist within the fraudulent-concealment exception of the statute:

> While prior decisions of this Court have eliminated the discovery rule for professional malpractice not involving fraudulent concealment or fraud, and have replaced it with the "some damage" rule, this provision makes clear that when professional malpractice involves fraudulent or intentional concealment of the wrongdoing, even when the initial wrongdoing is merely negligent, the statute of limitations contained in I.C. § 5–219(4) is tolled until the injured party "knows or in the exercise of reasonable care should have been put on inquiry regarding the ... matter complained of."

*McCoy v. Lyons*, 120 Idaho 765, 772, 820 P.2d 360, 367 (1991) (quoting I.C. § 5-219.4) (citations omitted). To emphasize: the inquiry is focused "on when the client learned of the lawyer's *actions* that constituted the malpractice." *Bliss Valley Foods, Inc.*, 127 Idaho at 15, 896 P.2d at 341 (emphasis added).

Discovery of the events comprising the underlying malpractice for purposes of commencing the statute of limitations is a factual question for the jury "unless there is no evidence creating a question of fact." *Id.* at 16, 896 P.2d at 342 (quoting *McCoy*, 120 Idaho at 773, 820 P.2d at 368). For example, in *McCoy v. Lyons*, this Court determined that where the plaintiff's complaint was untimely under the usual two-year statute of limitation period under section 5-219(4), the district court erred in awarding summary judgment to the defendant because the plaintiff's verified complaint alleged that the attorney concealed his malpractice to escape liability. 120 Idaho at 775, 820 P.2d at 370. The Court reasoned that the date of when the plaintiffs knew or should have known of the lawyer's malpractice was a question of fact that should have gone to the jury. *Id.*

Likewise, in *Bliss Valley Foods, Inc. v. Walker*, this Court determined that summary judgment was improperly granted to the defendants. 127 Idaho at 14–16, 896 P.2d at 340–42. The plaintiffs' affidavit alleged that the defendant had advised them to incorporate their partnership by telling them that the bank requested it, but the attorney had concealed that he suggested incorporation at a limited partner's meeting as a means to oust the plaintiffs or

13

neutralize their influence. *Id.* This Court focused on the interrelationship between the facts underlying the alleged malpractice and its concealment:

> There is an interrelationship between the alleged malpractice in this case and the concealment of the malpractice. Although [the attorney] contends that the alleged malpractice concerning the loan agreement was the inclusion of § 3.10, this is not the way the [plaintiffs] characterized the loan agreement malpractice. The [plaintiffs] alleged that they were "falsely advised by [the attorney] that . . . no material changes had been made" in the loan agreement since the earlier draft. It is this misrepresentation, together with [the attorney's] failure to disclose his opinions regarding the advisability of accepting the provisions contained in § 3.10 and his agreement with the loan officer, that [the plaintiffs] characterize as malpractice.

*Id.* at 15, 896 P.2d at 341.

Here, the unique facts of this case lead us to conclude that the district court properly determined that Walsh failed to present enough evidence to create a genuine issue of material fact. Walsh asserts that she could not have known Redd's advice amounted to malpractice even with Beckett's comments in June 2015. She spotlights the Blue Cross letter and CS&A's failure to advise her of it when they received it and their failure to include it when they surrendered her file. However, our inquiry is focused "on when the client learned of the lawyer's *actions* that constituted the malpractice." *Bliss Valley Foods, Inc.*, 127 Idaho at 15, 896 P.2d at 341.

As a preliminary matter, we agree with Walsh that Beckett's knowledge or beliefs should not have been imputed to her until he began to represent her independently of CS&A. However, we disagree with Walsh that this requires reversing the district court's grant of summary judgment. CS&A and the district court are correct that many jurisdictions have case law which impute the knowledge of the attorney to the client in statute-of-limitations circumstances.[3] However, the unique facts of this case take it outside the purview of the general rule. The imputed-knowledge doctrine is based on two rationales: (1) the unity between the attorney and client; and (2) that it will be presumed that the attorney's knowledge was communicated with the client. *See* W.A.E., *Imputation of attorney's knowledge of facts to his client*, 4 A.L.R. 1592 (2018). Here, neither theory finds purchase. Beckett worked at CS&A until April 2016. Until Walsh left CS&A with Beckett, he represented Walsh as a litigator, but Craig Swapp continued as

---

[3] *See*, *e.g.*, *Strong v. Sutter Cty Bd. of Sup'rs*, 115 Cal. Rptr. 3d 498, 509–10 (Cal. Ct. App. 2010); *In re Marriage of Mierlak*, 426 N.E.2d 1010, 1012 (Ill. App. Ct. 1981); *McKinney v. Waterman S.S. Corp*, 925 F.2d 1, 4–5 (1st Cir. 1991).

the supervising attorney. So while Beckett may have personally believed that the firm committed malpractice, CS&A's official stance was that it had not. Thus, one may ask *which* attorney's knowledge should be imputed to Walsh—Beckett's or Swapp's—making the "unity" rationale fragmented at best. Likewise, because the company line was that no malpractice had occurred, the record demonstrates that Beckett did not unequivocally advise Walsh of his opinion that malpractice occurred until March 2016. Thus, we cannot impute Beckett's knowledge or belief under the imputed-knowledge rationale until that point in time. However, because Beckett unequivocally expressed his belief that malpractice had occurred, we need not impute that knowledge because it had been actually communicated.

Thus, Beckett's statements to Walsh in June 2015 were sufficient to put her on inquiry that CS&A may have committed malpractice. In that initial meeting, Beckett informed Walsh that "it was not a good idea to settle one of two claims where the other claim is still pending in litigation where there is an overlapping injury" and "that there would be an empty chair and that it would be difficult to deal with." Understanding that the party just needs to be alerted to the lawyer's *actions* comprising the malpractice—not that the actions rose to the level of malpractice—Beckett's comments were sufficient to put Walsh on inquiry of CS&A's alleged malpractice. Not only was Walsh aware of the actions underlying the malpractice, Beckett's comments were sufficient to alert her to the possible negligent nature of those actions. So while Walsh focuses on the Blue Cross letter to assert that CS&A fraudulently concealed their malpractice from her, the Blue Cross subrogation interest was only one component of her malpractice action and was not the cornerstone of her malpractice claim. That Walsh filed her malpractice action before she claims she was aware of the Blue Cross letter supports that fact.

To sum up, Beckett's knowledge and belief regarding CS&A's alleged malpractice should not have been imputed to Walsh until he began to represent her apart from CS&A sometime in April 2016. Because that moment occurred after Beckett explicitly informed Walsh that he believed the firm committed malpractice in March 2015, there is no need to apply the imputed-knowledge doctrine in this case. However, for purposes of triggering the fraudulent concealment exception under Idaho Code section 5-219, the client need not be fully apprised of the legal malpractice, only of the facts or actions that comprised the legal malpractice. Here, Walsh was alerted to the actions that comprised her legal malpractice claim in June 2015 when Beckett alluded to the possibly negligent nature of CS&A's advice to settle the First Collision case. This

15

was sufficient to put her on inquiry under Idaho Code section 5-219(4) because that is when she would have "know[n] or in the exercise of reasonable care should have been put on inquiry regarding the . . . matter complained of." Accordingly, to be timely under the fraudulent concealment exception, Walsh should have filed her complaint in June 2016. Because she filed in March 2017, her cause of action is untimely, even under the fraudulent-concealment provision.

## C. Idaho Code section 5-219(4) is not unconstitutionally vague.

The district court denied Walsh's motion for reconsideration finding, in part, that Idaho Code section 5-219(4) was not unconstitutionally void for vagueness as applied to Walsh's claims. Walsh argues that this Court should determine that section 5-219(4) is unconstitutionally vague by arguing that she, or any member of the public, could not have fair notice of what the statute required.

"The Due Process Clause of the federal Constitution embodies the principle of void-for-vagueness, which is that a statute which either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Haw v. Idaho State Bd. of Med.*, 140 Idaho 152, 157, 90 P.3d 902, 907 (2004) (citing *Tuma v. Board of Nursing*, 100 Idaho 74, 593 P.2d 711 (1979)). Generally speaking, "the party asserting the unconstitutionality of a statute bears the burden of showing its invalidity and must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990) (citing *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983)). "It is generally presumed that legislative acts are constitutional, that the state legislature has acted within its constitutional powers, and any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *Id.* (citations omitted).

The void-for-vagueness doctrine results in the invalidation of statutes that are so vague as to invite incongruous results because it would leave the "public uncertain as to the conduct it prohibits" and "judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Id.* at 715, 791 P.2d at 1294. In her brief, Walsh claims that section 5-219(4) meets this standard because it fails to provide fair notice of when her claim accrued. However, the statute is clear as to the conduct it prohibits *i.e.* malpractice causes of action are barred within certain timeframes. The "some damage" accrual standard stems from this Court's case law on the issue. While many of the cases this Court has

16

decided regarding when a cause of action accrues reach different results under different circumstances, this is explained by the highly fact-specific nature of the inquiry. *See Reynolds v. Trout Jones Gledhill Fuhrman, P.A.*, 154 Idaho 21, 25, 293 P.3d 645, 649 (2013) ("The determination of what constitutes both damage and objective proof must be decided 'on the circumstances of each case.'"). Furthermore, this Court's articulation of the "some damage" standard can only serve to extend the otherwise cut-and-dry rule announced in the statute. Accordingly, Walsh has failed to carry her burden to show that Idaho Code section 5-219(4) is unconstitutional on void-for-vagueness grounds.

## V.   CONCLUSION

Based on the above, we determine that the district court did not err in awarding summary judgment to CS&A. The district court properly determined that Walsh's claim is time barred under Idaho Code section 5-219 because her cause of action accrued when she signed the release of claims for the First Collision case more than two years prior to her filing the action at hand. Further, the district court properly determined that the fraudulent-concealment provision of Idaho Code section 5-219(4) did not apply because Walsh was put on inquiry of CS&A's alleged malpractice in June 2015, more than one year prior to filing this action. The district court's decision granting CS&A's motion for summary judgment and its final judgment are affirmed. Costs are awarded to CS&A.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR**.

17